## Goodman Appeal.

24

Argued January 17, 1967. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused April 18, 1967.

*James L. Rankin,* with him *Rankin & Rankin,* for appellants.

*John H. Clark, Jr.,* with him *Seletz and Clark,* for appellant.

*Garland D. Cherry,* with him *Kassab, Cherry, Curran and Archbold,* for appellee.

OPINION BY MR. JUSTICE JONES, March 14, 1967:

In 1957, Tinicum Township (Township), a first-class township, purchased a tract of land, consisting of approximately 19 acres, located at the corner of Wanamaker Avenue and Governor Printz Boulevard in Tinicum Township, Delaware County. On August 3, 1959, the Township duly adopted an ordinance which provided, in pertinent part: "The Township does hereby dedicate and set apart for public park and recreation purposes and for making, enlarging and maintaining

public parks, recreation areas and facilities, [the 19 acre tract of land]."[1]

The Township Recreation Board, with the Township's authority, supervised, maintained and regulated this land from 1959 until 1966. The land was used by the public especially the youth of the Township for approximately five months during each year; located thereon were two softball fields with bleachers, backstops, and permanent bases, provided, with township funds, by the recreation board. In October, 1963, the Township sold approximately one-third acre of this land to an adjoining church, and at that time, the Township, acting through its commissioners, placed in the township records a so-called "statement of principles" to the effect that this land was not for sale and would not be for sale unless and until substitute land was available, that it would not be for sale until highway plans of the Commonwealth which would take part of the property were finalized and that no agreement for the sale of any substantial part of this land would be entered into "without first holding a public hearing."

On February 7, 1966, by a resolution which was not advertised, the township commissioners were authorized to dispose of the land "at public or private sale," after procuring approval of any court "if, as, and when necessary" with the direction that proceeds derived from the sale should not be used for general purposes but should continue to be held for "public purposes as may hereafter be determined." On February 21, 1966, George and Louis Goodman conferred with the township commissioners and township solicitor. While there is a conflict of testimony as to what transpired at

---

[1] Approximately four acres of the land, i.e., that portion bordering on Wanamaker and Governor Printz highways, were zoned "Commercial"; the rest of the land was zoned "Residential".

that meeting, there was testimony that George Goodman was willing to offer $125,000 for the land as then zoned, although the Township witnesses stated such offer was contingent upon the zoning being changed. Late in March 1966, the township commissioners met with one John P. Acchione, and, on April 4, 1966, at a regular meeting, the commissioners authorized the sale of the land to Acchione for $100,000 at a private, not a public, sale. On April 6, 1966, the township commissioners entered into a written agreement with Acchione "or his nominee" for the sale of the land for $100,000, this agreement stating, inter alia, "This agreement is subject to the approval of any Court which may be required and if Court approval cannot be obtained then this agreement shall become null and void." By a letter mailed to the township commissioners and read at their regular meeting on May 2, 1966, Messrs. Goodman protested the proposed private sale to Acchione for $100,000 and stated that they would bid at a public sale at least $125,000 upon the same conditions as contained in the Township-Acchione agreement of April 6, 1966.

On May 12, 1966, Acchione filed in the Court of Common Pleas of Delaware County a petition, later duly advertised, under the Revised Price Act of 1917 (Act of June 7, 1917, P.L. 388, §1 et seq., as amended, 20 P.S. §1561 et seq.).[2] Thereafter, George and Louis Goodman instituted an action in equity against the township commissioners and Acchione seeking to have the proposed private sale enjoined.[3]

---

[2] Notice was given of the proposed sale to the Attorney General who advised that the Commonwealth had no objection to the sale.

[3] Before this Court are two appeals, an appeal by George Goodman and Louis Goodman (No. 62 January Term 1967) and an appeal by John Finnigan (No. 74 January Term 1967). These are appeals from the decree of the court below approving the private

28

After hearing in the court below, at which, inter alia, the Messrs. Goodman repeated their offer to pay $125,000 for the land, the court below entered a decree approving the sale to Acchione for $100,000. Shortly thereafter, and after preparation of the court's adjudication approving the sale for $100,000, Acchione offered to pay $125,000 and the court amended its decree to approve the private sale of this land to Acchione for $125,000. Upon entry of the decree, the Township *the next day*[4] conveyed the property to Acchione for $125,-000.

The court below, in its opinion, expressed some doubt as to its *jurisdiction* to act inasmuch as it would have no jurisdiction unless, by the township ordinance of 1959, a trust had been created. The court stated, "the Revised Price Act probably contemplated a situation, as applied to a municipal corporation, where land is *conveyed* in trust for use for specific purposes only and/or for the benefit of a particular class of people". However, the court below, upon the premise that the parties did not question its jurisdiction, decided the petition on its merits. Under the circumstances, it becomes our duty, initially, to determine whether the court below did have jurisdiction.

---

sale under the Revised Price Act, supra. The equity action is not involved in the present appeals.

4 Section 24 of the Revised Price Act, supra (20 P.S. §1781), provides the procedure for appeals under the statute. Under that section, it is provided: ". . . That if any decree be carried into execution before the appeal be perfected and written notice thereof given to any vendee, mortgagee, or lessee, any reversal thereof shall not affect the right or title of such vendee, mortgagee or lessee; but the purchase-or mortgage-moneys or rents shall stand in lieu of the premises sold or mortgaged or leased, so far as thus encumbered: [and] . . . That, before any decree be carried into effect to afford such indemnity, twenty-one days be allowed from its entry to take and perfect such appeal." Goodmans filed their appeal the day after the decree was entered and Finnigan filed his appeal sixteen days thereafter.

The Township purchased this land and then dedicated it unequivocally to the public use. That a municipality can do so is well settled; a municipality can act as trustee for a trust of a public nature provided that such trust is germane to the objects of the municipal corporation: *The Mayor, Aldermen v. Elliott,* 3 Rawle 170 (1831); *Cresson's Appeal,* 30 Pa. 437 (1858); *Philadelphia v. Fox,* 64 Pa. 169, 181, 182, (1870); Bogert, Trusts and Trustees (2d Ed.) §130, pp. 633, 634.[5] The dedication of this land was clearly for the public use and the object of such dedication was well within the municipality's general purposes. Moreover, that a municipality may dedicate property to the public use is clear: *Commonwealth v. Rush,* 14 Pa. 186, 189 (1850); *Hoffman v. Pittsburgh,* 365 Pa. 386, 395, 75 A. 2d 649 (1950); *Leech Appeal,* 170 Pa. Superior Ct. 130, 84 A. 2d 787 (1951).

That the municipality in this case would be both the settlor and the trustee of the trust presents no obstacle to the creation of a trust. Section 17 of Restatement 2d, Trusts, provides: "A trust may be created by (a) a declaration by the owner of property that he holds it as trustee for another person; . . ." and Section 100 of Restatement 2d, Trusts, provides: "The Settlor as Trustee. The settlor of a trust can be the trustee of the trust."

The township by its dedication of this land to the public use created a trust wherein it became the trustee, subject to all the duties and responsibilities imposed on any other trustee. See: *Loechel v. Columbia Borough School District,* 369 Pa. 132, 136, 85 A. 2d 81 (1952). In our view, any contemplated sale of this land could be accomplished only by strict compliance with the provisions of the Revised Price Act, supra, and the

[5] However, a municipality cannot act as trustee of a private trust: *Franklin's Estate,* 150 Pa. 437, 449, 450, 24 A. 626 (1892).

30

court below clearly had jurisdiction to entertain this petition under that statute.

In determining this appeal we bear in mind certain established legal principles: (1) "By a host of authorities in our own and other jurisdictions it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion:" *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 572, 573, 109 A. 2d 331 (1954). See also: *Hyam v. Upper Montgomery Joint Authority*, 399 Pa. 446, 455-457, 160 A. 2d 539 (1960) and authorities therein cited; (2) a municipal corporation has neither implied nor incidental authority to sell for private use land dedicated to or held by it in trust for the public use: *Hoffman v. Pittsburgh*, 365 Pa. 386, 395, 75 A. 2d 649 (1950). See also: *Philadelphia Museums v. Univerity of Pennsylvania*, 251 Pa. 115, 96 A. 123 (1915); *Commonwealth v. Rush*, 14 Pa. 186 (1850); (3) however, land held by a municipal corporation and dedicated to a public use may be sold *with court approval* secured in compliance with the provisions of the Revised Price Act, supra, (*Loechel*

*v. Columbia Borough School District*, 369 Pa. 132, 85 A. 2d 81 (1952)), but the proceeds of such court-approved sale must be held for the same or like use: Revised Price Act, supra, §10, 20 P.S. §1644; *Greenville Borough Petition*, 11 Pa. D. & C. 2d 50 (1957); (4) when a municipal corporation acts *in a fiduciary capacity* it is not only the right but the statutory duty of the judiciary to inquire into the propriety of the actions of municipal officers in disposing of assets which the municipality holds in trust: *Heilig Bros. Co., Inc. v. Kohler*, 366 Pa. 72, 76 A. 2d 613 (1950).

Reading the instant record one is immediately struck by the fact that the municipal corporation, the Township, played so passive a part in this proceeding and that the petition to secure court approval to sell this land was presented not by the Township but by Acchione.[6] Moreover, in these appeals the Township has never entered any appearance nor has it, by oral argument or written brief, presented to this Court its position or in any manner defended its actions. Such apparent lack of interest is not only extraordinary but inexplicable.

Bearing in mind that the township commissioners in 1963 had pledged in its so-called "statement of principles" that this land would not be sold in any substantial part until a "public meeting" had been held at which the views of the public could be ascertained, the commissioners' actions three years later are difficult to understand. According to the record, despite previous denials of the township officials that the land was for sale, in February, 1966, steps were taken toward a sale of this land. Whether we accept the township officials' version or Goodmans' version of that which transpired, it cannot be denied that the township

---

[6] That Acchione, as a "party in interest", i.e., the prospective purchaser, had standing to initiate this proceeding is clear.

officials *knew,* before receipt of Acchione's offers, that Goodmans were interested in the purchase of the property. The township commissioners then hired two appraisers one of whom valued the land at $66,500 and the other at $70,300, values which fixed a minimum sales price for the land. However, without any notice whatsoever to the public of an intent to sell the land, without holding the "public hearing" pledged in 1963, without making any attempt whatsoever to ascertain whether Goodmans or anyone else were *then* interested in purchasing this property, without considering whether a public rather than a private sale would call forth a better price, the township officials, in late March, 1966, met with Acchione and agreed to accept from him $100,000 for this land. Thereafter, on April 4, 1966, the township commissioners authorized the sale of the land to Acchione for $100,000. Before any petition had been presented to the court for approval of the contemplated private sale of this land, the township commissioners knew that the land could be sold to Goodmans for a price $25,000 in excess of the price offered by Acchione, yet they persisted in attempting to effect a sale to Acchione. The only notice to the public of the proposed disposition, by way of sale, of this land was *after* execution of the Acchione-Township agreement and at the time of presentation to the court of Acchione's petition for the sale under the Revised Price Act, supra.

There is not a scintilla of evidence upon this record to indicate that the price of $100,000 offered for a private sale of this land was better than could be obtained at a public sale. Section 20(a) of the Revised Price Act, supra (20 P.S. §1761), provides ". . . The courts of the several counties of this Commonwealth, in all cases where under the provisions of this act such courts have power to order the sale of real estate, may authorize or direct a private sale, *if, in the*

*opinion of the court, under all the circumstances, a better price can be obtained at private than at public sale,* as where the interest shall be undivided, *or for any other sufficient cause."* (Emphasis supplied). The court below did not and could not on the contents of this record have decided that $100,000 was a better price than could have been obtained at a public sale; instead, it found that, under the circumstances, "sufficient cause" was presented to justify the court in affirming the proposed private sale. We fail to find evidence of any circumstances which would constitute "sufficient cause" to justify approval of the proposed private sale.

Several facts of record are highly significant: (a) the obvious reluctance, almost to the point of secrecy, of the township commissioners to make known their intent to sell this property; (b) the complete failure of the township commissioners to ascertain whether any other person or persons would be interested in the purchase of this property, even though they had knowledge that at least the Goodmans were interested; (c) the fact that the court was willing, as evidenced by its first decree, to approve the sale of this property for $100,000; (d) the belated offer of Acchione to pay 25% more for the property than the price for which the court had approved the private sale; (e) the inordinate haste of the Township to convey this property immediately after the entry of the court decree in an obvious attempt to nullify the right of appeal from the decree. The concatenation of circumstances surrounding this entire transaction cast grave doubt on the good faith of the Township in this transaction.

In *Heilig Bros. Co. Inc. v. Kohler,* 366 Pa. 72, 76 A. 2d 613, (1950), a factual situation quite similar to that in the case at bar was presented. In *Heilig,* this Court noted ". . . the entire transaction was conducted with extreme haste and with great secrecy. All

34

preliminary negotiations were conducted informally. . . ., the negotiations of the pending sale were not raised or discussed at any of the public meetings held by the board. Only the members of the board and [the potential buyer] were aware that the tract in question was for sale. No minutes were kept of the negotiations. It was only after all preliminary negotiations had been completed and after the terms and price of the sale were agreed upon, that a public meeting was held. It was at this meeting that the parties intended to culminate and make formal their previous informal agreement". (pp. 79, 80). We held, ". . . it was a clear breach of trust and a fraud for [the Institution District] to sell public land without the slightest effort to ascertain whether the greatly increased offer over the contemplated sale price was still good, especially after actual notice immediately prior to and during the execution of the deed. The above facts establish the [Institution District's] negligence and wrongful conduct which ordinarily would require the setting aside of such an iniquitous transaction." (p. 78). The conduct in *Heilig* and the conduct in the instant case were not unlike.

Upon this land was located a sewage pumping station which served, at the time, a church and school complex across the street from the property and which was designed to serve any structure which might have been erected on the land itself. An examination of the agreement of sale between Acchione and the Township indicates that, in their haste to complete the deal, the township commissioners sold not only the land but the sewage pumping station. While the court below dismissed this fact with the suggestion that it could see no public interest to be served by the retention of such pumping station, yet the failure of the Township to note in some manner the disposal

of this township asset eloquently points to the slipshod manner in which this transaction was handled.

In *Baton Coal Company Appeal,* 365 Pa. 519, 76 A. 2d 194 (1950) this Court distinguished between a *judicial sale,* i.e., a sale which must be based upon an order or a decree directing the sale, and *judicial assent* to a sale because of a statutory requirement. Under the distinction drawn in *Baton,* the instant sale was clearly a judicial sale. In *Baton,* we also held that where a higher offer is made following a judicial sale, the acceptance or the refusal of such higher offer is in the sound discretion of the court. See also: *McKees Rocks Borough School District Petition,* 360 Pa. 285, 288, 289, 62 A. 2d 20 (1948).[7] We have accepted this criterion in passing upon these appeals.

Fully cognizant of judicial reluctance ordinarily to interfere in the actions of municipal officials, nevertheless, the instant situation mandates judicial intervention. The private sale of this land under the circumstances should not have been approved. Our review of this record reveals no reason to justify a private rather than a public sale of this land upon which a trust had been imposed nor do we find any "other sufficient cause" to justify the sale under the circumstances. While the law entrusts considerable discretion to the court to which a petition is presented under the Revised Price Act, supra, we believe that in approving this sale the court below abused its discretion. The Township was acting in a fiduciary capacity and its actions in effecting this sale fell far short of the statutory duty placed upon fiduciaries. The failure by the Township to make any effort to

---

[7] The Act of May 24, 1945, P. L. 944, §1, 20 P.S. §818, is inapplicable to contracts made by one in a fiduciary capacity which require court approval. See: *Binenstock Trust,* 410 Pa. 425, 432, 433, 190 A. 2d 288 (1963).

obtain a more advantageous price for this land constituted a breach of its trust.

The decree is reversed, the deed from the Township to Acchione is set aside and title of the land so conveyed is declared to be in the Township. Costs to be paid by Acchione.

MR. JUSTICE ROBERTS concurs in the result.