## In re Petition of Borough
## of Freeland

*James V. Senape, Jr.,* for petitioner.

*Martin J. O'Donnell, Martin D. Cohn* and *Laputka, Bayless, Ecker & Cohn,* for objectors.

BIGELOW, J., February 1, 1974.—On November 14, 1972, the Borough of Freeland, trustee, filed a petition the prayer of which is that the Borough of Freeland, as trustee, be authorized to sell certain park lands in the borough free from restraints of alienation pursuant to the Acts of Assembly of June 7, 1917, P. L. 388, 20 PS §1564, et seq., now Chapter 82 of Title 22, July 1, 1972 (No. 164), and the Act of December 15, 1959, P. L. 1772, 53 PS §3381.

Hearing was held on January 22, 1974. The Commonwealth of Pennsylvania was notified of the hearing but did not appear, nor did it file any formal objection, but by letter, received by petitioner's counsel on the day of the hearing, advised the court and petitioner that it did not endorse the prayer of the petition and reminded the court that the issues of the sufficiency of the petition and the reasonableness of the offer must be decided by the court. Several citi-

zens of the borough appeared at the hearing in response to the public notice and testified to their opposition to the proposed release of the subject land from the deed restriction that the land be held in trust by the borough for the purpose of a public park. A representative of the Freeland Jaycees testified that that organization did not oppose the sale of the land but did request that the fund derived from the sale be impressed with a trust in order that it be used only for recreational purposes. Members of borough council and Borough Secretary John Herkalo testified in support of the petition.

At the hearing, an amended petition was presented by the borough solicitor and was filed on that date. After discussion on the record the hearing judge concluded that the published notice adequately advised any interested party of the date, time and place of the hearing, and that the purpose thereof was to free the specifically identified land in question from the restrictions on alienation set forth in the original deeds and to approve the grant of an option to sell this land.

From the record of the hearing of January 22, 1974, the court makes the following:

## FINDINGS OF FACT

1. The Borough of Freeland as trustee became the owner of a parcel of land of approximately 15 acres in said borough by virtue of two deeds, the first from Cross Creek Coal Company dated May 26, 1892, recorded in deed book 308, at page 374, the second from Highland Coal Company, dated September 24, 1909, recorded in Deed Book 463, at page 54, in trust for the purpose of a public park as set forth in said deeds.

2. By proceedings in this court, filed to May term, 1958, no. 1014, and order of Judge Lewis dated May 20, 1958, the Borough of Freeland was authorized to sell approximately two-thirds of this area to the Freeland Industrial Development Corporation, "in fee simple, free and clear and discharged from trusts, contingencies and remainders and indefeasible by any party or persons having a present or expectant interest therein," and further directed that the purchase price ($1,056.60) shall be used for the upkeep and maintenance of the existing public park in the Borough of Freeland, "bounded and described as follows: Bounded on the north by Front Street, on the west by Park Alley, on the south by Main Street, and on the east by lands now or late of the Pennsylvania Power and Light Company."

3. The remaining lands, an area of approximately four and one-half acres, known as the Freeland Public Park, adjoins a now vacant industrial building formerly occupied by Tappan Company.

4. The borough council by unanimous action has determined that this land should be sold to the highest bidder for use as an industrial area to furnish employment to the citizens of Freeland and has petitioned this court, by the petition filed November 14, 1972, and the amended petition filed January 22, 1974, pursuant to the Revised Price Act, 20 Pa. S. Chapter 82, §8201, et seq., and the Act of December 15, 1959, P. L. 1772, 53 PS §3381, et seq.:

"[T]o authorize it as trustee under the several deeds mentioned in the petitions filed in this matter to be able to freely alienate the real estate in question free from the restraints of alienation placed upon it as a trustee under the several deeds of trust; and to whatever extent required to approve the Borough's execution of an option to purchase the real estate and

the sale of the real estate authorized therein and to authorize the Borough to apply the net proceeds of sale to expenditures and usage which approximate the original intent of the deed trust."

5. The opposition to the action of borough council is expressed by the testimony of Robert Rossi and Rev. Richard Girard, residents of the borough, and through questions asked by these men of the public officers who testified. From this the court finds that:

a. If and when this land is sold, the entire tract originally conveyed to the borough as trustee, for recreational purposes, will have been sold and the only central municipality outdoor recreational facility will be a skating rink on leased land unless additional facilities are required.

b. The Freeland Public Park is presently intensively used for three and one-half months during the year, although it is available for use during the entire year, as a centrally located meeting place, for older citizens and children, for homecoming, dances, and during the past summer 90 children were registered at the park for the activities, according to the testimony of Deborah Carr, the young lady in charge.

c. The council's decision to sell the park was reached without consultation with the Luzerne County Planning Commission or reference to any long-range recreation plan.

6. The position of the Freeland Jaycees, expressed by Ronald Pokorny, is that this organization approves the petition but requests assurance that the money received from the option and sale be utilized by the Borough of Freeland only for recreational purposes.

7. James Senape, Jr., Esq., solicitor of the borough, advised the 23 persons attending the court proceedings, on the record, that the park would remain in public use during the ten-year option period until 12

months from the date of purchase and at the end of that time, all equipment and buildings may be retained by the borough.

8. At a meeting of Freeland Borough Council held on January 21, 1974, a bid was submitted by Garland Commercial Industries, Inc., in the amount of $150,-000 during the first five-year period of the option and in the amount of $185,000 during the second five-year period; and, as part of said bid, the bidder stated that the premises subject of the bid, if purchased, would be used for industrial development and expansion in connection with adjacent premises to be leased from Freeland Industrial Development Corporation.

9. According to the testimony of Larry Gross, Vice President of Garland Commercial Industries, Inc., and Welbilt Corporation, which owns Garland Commercial Industries, Inc., the optioned land is necessary for any expansion of the Nautilus building which is owned by Freeland Industrial Development Corporation and which Garland proposes to lease from F. I. D. C., in conjunction with sponsorship of Pennsylvania Industrial Development Authority, and in which Garland proposes to employ 148 employes in the first year of operation in Freeland, with an annual payroll in excess of $1,000,000.

10. Garland, through an agent, approached Borough Council and initiated the negotiations for obtaining the option to purchase the park area as a condition for negotiations with F. I. D. C. for acquisition of the adjoining unoccupied Nautilus building.

11. The park land is in area occupied by residences, the Y. M. C. A., the library, a church and the Nautilus industrial building, which has been vacant for over 18 months.

12. The value of the land of the park which is the subject of the option has been estimated by Louis

Schiavo, a realtor, at $30,000 on a wholesale basis to one purchaser and at $50,000 on a subdivided basis (plus $28,000 for improvements), and by Frederick M. Javer, a real estate appraiser, at $60,000 (plus $251,600 for improvements). The classification of improvements included buildings, trees, equipment, paving, and landscaping. Mr. Gross testified that in his opinion the land alone would be worth about $7,000 an acre. No other estimates or appraisals were placed in evidence.

13. By affidavit filed January 22, 1974, James V. Senape, Jr., Esq., the borough solicitor, averred notice of the hearing of January 22, 1974, published in the Standard-Speaker, Inc., on December 29 and 31, 1973, and legal notice thereof on January 4, 11 and 18, 1974, and in the Luzerne Legal Register on January 4, 11 and 18, 1974, and by posting handbills of said advertisements on the subject land and other designated public places in the Borough of Freeland, and by service upon the Attorney General of the Commonwealth of Pennsylvania at least ten days prior to said hearing.

## DISCUSSION

From the testimony at the hearing of January 22, 1974, the hearing judge recognized the divergent positions represented thereat. Freeland Borough Council, in an effort to improve the employment opportunities in, and thus the economic status of, the borough has accepted an option bid by Garland Commercial Industries, Inc., the basic elements of which are outlined in finding no. 8, for the option to purchase the remaining portion of the Freeland Public Park. The borough council is aware of its duties under the conveyances in trust creating the park and is also cognizant of its duty to improve and stimulate the economic growth of the community. The first in-

road was made upon the park area in 1958 when this court approved the confirming sale by the borough to the Freeland Industrial Development Corporation for industrial development purposes of approximately two-thirds of the park area for $1,056.60, about $109 per acre as the hearing judge calculated. There appear in the record to be no other reasons for the proposed option and possible sale of this land to Garland for either $150,000 or $185,000, depending on when the option is exercised, other than the desire of the councilmen to promote employment opportunities in the borough. Mention was made by Mr. Rossi that there had been indications in the past that satellite parks would be provided for the borough's population. Mr. Pokorny also testified as to the possibility of the proceeds of the sale being used for the development of other park areas in the borough. Former Mayor John M. Watahovich outlined the history of the industrial development movement in Freeland and the importance of employment opportunities to the borough and its citizens. Mr. Rossi, a State Police officer, indicated that there is some opinion in the borough as to misuse of the park by young persons which, in his opinion, could be corrected by curfew regulations. Mr. Daniel Myers, who is president of borough council and a member of the recreation board, testified as to plans to expand the recreational facilities of the borough for the various age and interest groups in the community, for which the moneys received from the sale of this land would be available, and that the present issue involves the priorities of the two opposing interests—industrial development or/and continued recreational use of the land.

Practically, of course, the real issue is whether the remaining park land shall remain in recreational

use or become an addition to an industrial use. Legally, the issue is whether the hearing judge should approve the declared determination of the borough council that the recreational use imposed by the two deeds shall be eliminated as to this land, thus releasing it for sale by the borough through the option bid now accepted by the borough council. As to this issue the court is guided not only by the two statutes but also by the rulings and statements of the Supreme Court of Pennsylvania in Goodman Appeal, 425 Pa. 23.

Section 8202 of the Revised Price Act, 20 Pa. S §8202, provides that the jurisdiction conferred in section 8201 shall be exercised in cases in which legal title is held by a corporation of any kind subject to a trust of any description, and section 8206 establishes the procedure to be followed. The court concludes that the petition is sufficient, that the notice to parties in interest is sufficient and that the court has jurisdiction over the subject matter. The court also concludes that proper notice to the Attorney General of the Commonwealth of Pennsylvania and to the public has been given as required by section 5 of the Act of December 15, 1959, P. L. 1772, and that this court has jurisdiction over the subject matter of the petitions as set forth in said act.

In Goodman Appeal, 425 Pa. 23, the Supreme Court reiterated the basic principles governing the function of this court in hearing and determining petitions such as the present one:

" '(1) courts will not review the actions of governmental bodies. . . . involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution . . . the scope

of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion . . . , (2) a municipal corporation has neither implied nor incidental authority to sell for private use land dedicated to or held by it in trust for the public use. . . (3) however, land held by a municipal corporation and dedicated to a public use may be sold with court approval secured in compliance with the provisions of the Revised Price Act. . . . , but the proceeds of such court-approved sale must be held for the same or like use . . . ; (4) when a municipal corporation acts in a fiduciary capacity it is not only the right but the statutory duty of the judiciary to inquire into the propriety of the actions of municipal officers in disposing of assets which the municipality holds in trust' ": Pages 30-31.

Following the Supreme Court's instructions, this court reaches the following:

## CONCLUSIONS OF LAW

1. That the Council of the Borough of Freeland has acted within its discretionary powers in determining that the remaining land of the Freeland Public Park should be optioned and sold for industrial development purposes.

2. In so determining, the Council of the Borough of Freeland has not acted in bad faith, fraudulently, or capriciously, has not abused its power, and has not abused its discretion or exercised it in a purely arbitrary manner, as evidenced by the following:

a. The deliberate manner in which the council has proceeded with this matter, the public meetings which have been held, the notice and advertising utilized to inform the public of the consideration by council of this matter;

b. The purchase price for the land exceeds the two independent appraisals obtained by council; as to said purchase price there is no evidence whatever that it is not a fair price to the public for this land.

c. The option bid and accepted at the meeting of January 21, 1974, is for the land only; all equipment, buildings, etc. can be removed by the borough if and when the option is exercised, and the land shall remain as a park for 12 months after the land is bought and paid for.

d. The borough authorities are engaged in planning and operating other recreational facilities.

3. The granting of the option and the sale of the land pursuant to the option if it is exercised may be accomplished by the borough only with court approval secured pursuant to the Revised Price Act.

4. The proceeds of such court approved sale must be held for the same or like use as the trust impressed on the land, in this case for public parks and like uses.

5. In the exercise of its discretion, the borough council has determined that the continued existence of a four and one-half acre public park in the central part of the borough, in close proximity to industrial buildings as well as to residences, the YMCA, the library, and a church, is not as appropriate nor as beneficial to the community as the possible use of this land for industrial expansion, if so elected by the industry requiring this option as a requisite for its entry into the Borough of Freeland and its operation of a now-

vacant adjoining industrial building with the consequent employment of at least 148 employes. With this determination this court, under the facts and circumstances of this case, should not interfere.

6. That this matter is properly before this court, all interested parties having had due notice thereof; and this court, having jurisdiction over the subject matter, and has before it for determination the averments of the petition and the amendments thereto.

The court cannot foretell the future and, thus, cannot determine whether the determination of the borough council will find support in future events. In any event, the court is not to substitute its judgment for that of the borough council and is restricted to the matters it may review and on the basis of which it could reverse the determination of the borough council. As noted above, the factors on which this action could be taken have not been found in these proceedings. In fact, the court believes that the members of council have acted prudently, have considered the matter placed before them by Garland, have related this proposal to the welfare of the people of the Borough of Freeland, and have exercised their discretion solely on the basis of their determination of the need for employment opportunities obtainable only through this course of action, the requirements of the people of the borough for public park areas, and like uses to be provided in other ways but particularly, as required by the Revised Price Act, through the use of the moneys obtained for the option and from the sale when it eventuates.

## ORDER

For the reasons stated in the above decision, the findings of fact and the conclusions of law, the court

hereby orders and directs that the land in the Borough of Freeland, County of Luzerne, known as the Freeland Public Park, as described as area No. 1 on pages 4 and 5 of the Petition of the Borough of Freeland, Trustee, filed to May term, 1958, no. 1014, may be sold by the Council of the Borough of Freeland pursuant to the option granted by it on January 21, 1974, in fee simple, free and clear of all trusts, contingencies and remainders, particularly those impressed on said lands by the deeds set forth in finding of fact, no. 1 herein, and it is further ordered and directed that the moneys obtained by said borough from said grant of option and from said sale, if and when consummated, shall be held by the Borough of Freeland in trust for public park uses and public recreational uses hereby determined to be like uses within the requirements of section 8214 of the Revised Price Act, 20 Pa. S. §8214, and section 4(2) of the Act of December 15, 1959, P. L. 1772, 53 PS §3384(2), and Goodman Appeal, 425 Pa. 23.