520 A.2d 25

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**STATE CONFERENCE OF STATE POLICE LODGES OF the FRATERNAL ORDER OF POLICE, by its Trustee Ad Litem, John Long, President, Appellant.**

Supreme Court of Pennsylvania.

Argued May 13, 1986.

Decided Jan. 15, 1987.

Anthony C. Busillo, Harrisburg, for appellant.

Richard Kirschner, Alaine S. Williams, Robert A. Sloan, Philadelphia, for amicus curiae (AFSCME).

Robert J. Schwartz, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

In this case Appellant, State Conference of State Police Lodges of the Fraternal Order of Police (F.O.P.), appeals from an Opinion and Order of Commonwealth Court, 88 Pa.Commonwealth Ct. 356, 489 A.2d 317, (Rodgers, J., dissenting) striking an arbitration award of an agency shop. The award of an agency shop had been made pursuant to the Act of June 24, 1968 (Act 111), P.L. 237, 43 P.S. §§ 217.1–217.10. The parties to the arbitration proceeding were Appellee, the Commonwealth, as public employer; and Appellant, the F.O.P., as exclusive representative of uniformed State Police employees for purposes of Act 111. The arbitration award read as follows:

Award: The demand of the F.O.P is granted. The following language shall be added to the contract between the parties.

All employees who do not become Union members after January 1, 1984, shall as a condition of employment pay to the Union each month, a service charge as a contribution toward administration of this Agreement, an amount equal to the regular monthly dues and assessments of the Union. Upon failure to pay the charge, the Employer shall discharge the employee when advised by the Union.

█ Appellee made a number of arguments before Commonwealth Court to the effect that the agency shop award was illegal. Appellee argued that the award was a violation of the constitutional rights of those employees choosing not to join the union because the award did not provide assurances that payments by non-members would not be used for activities other than collective bargaining activities. Commonwealth Court properly concluded that Appellee, the Commonwealth, lacked standing to assert such rights on behalf of public employees. See, *Board of Commissioners*

*of Montgomery County v. Lukens,* 51 Pa.Commonwealth Ct. 576, 415 A.2d 118 (1980), *aff'd. per curiam,* 494 Pa. 64, 428 A.2d 972 (1981).

■ Appellee also argued that an agency shop provision was outside the scope of Act 111 arbitration. After reviewing Sections 1 and 4 of Act 111, Commonwealth Court properly concluded that, although Act 111 was silent on the subject, silence could not be interpreted as precluding an agency shop from a collective bargaining agreement between a public employer and public employees, particularly where Act 111 is construed in conjunction with the Pennsylvania Labor Relations Act (PLRA), Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.13. This Court previously determined that Act 111 and the PLRA are to be construed, within certain limits, as a single statute. See, *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977). Section 6(1)(c) of the PLRA, 43 P.S. § 211.6(1)(c), provides that:

> ... nothing in this act, or in any agreement approved or prescribed thereunder, or in any other statute of this Commonwealth, shall preclude an employer from making an agreement with a labor organization ... to require, as a condition of employment, membership therein, if such labor organization is the representative of the employes....

■ Certainly, under this statute, an agency shop cannot be precluded from being a proper subject of collective bargaining. Commonwealth Court was, therefore, correct in its determination that Act 111 and the PLRA, when read together, do not exclude the issue of an agency shop as a topic for collective bargaining and arbitration, and, therefore, that union membership and payment of fees and assessments by non-union employees are permissible subjects for bargaining and arbitration.[1]

1. The Public Employe Relations Act, Act of July 23, 1970 (Act 195), P.L. 563, 43 P.S. §§ 1101.101, *et seq.,* is inapplicable to this case. See,

Commonwealth Court decided, however, that the award of an agency shop here was illegal under Section 711 of The Administrative Code of 1929 (Code), Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 251. Section 711(b) of the Code, 71 P.S. § 251(b), details the court-martial procedure to be followed in the event any enlisted member of the State Police is dismissed or refused re-enlistment by the State Police Commissioner before the member has reached mandatory retirement age. Commonwealth Court felt that the arbitration award in the instant case would compel the discharge of a member of the State Police without regard to that procedure. Assuming that a non-union member does not pay the required fees and assessments, dismissal is mandatory. A hearing pursuant to Section 711(b) of the Code would be solely to determine whether the police officer had paid dues and assessments as required by the F.O.P. A finding that payment had not been made would mandate dismissal under the arbitration award. Commonwealth Court thought this contrary to Section 711(b) of the Code which provides, *inter alia,* that the Court-martial Board shall recommend discharge, demotion, or refusal of re-enlistment to the Commissioner, who then has *discretion* either to follow or disregard the recommendation.

Although Section 711 of the Code does not specify the grounds for discharge of members of the State Police, Commonwealth Court found the arbitration award of an agency shop to be in conflict with the Administrative Code and, hence, that Court struck down the award. We think Commonwealth Court's reasoning on this point is erroneous and that the award, therefore, must be reinstated.

We have consistently held that arbitration panels are empowered to award any terms or conditions of employment to which a public employer and its police employees might have voluntarily agreed. See, *City of Washington v. Police Department,* 436 Pa. 168, 259 A.2d 437 (1969). See also, *Guthrie v. Borough of Wilkinsburg,* 508 Pa. 590, 499

*Geriot v. Council of Borough of Darby,* 491 Pa. 63, 417 A.2d 1144 (1980).

A.2d 570 (1985); *Township of Moon v. Police Officers,* 508 Pa. 495, 498 A.2d 1305 (1985); *F.O.P. v. Hickey,* 499 Pa. 194, 452 A.2d 1005 (1982). As already noted, an agency shop is a legitimate subject for collective bargaining, and, hence, arbitration under § 6(1)(c) of the PLRA. Indeed, that section is emphatic to the effect that "nothing ... in any other statute of this Commonwealth" precludes an agency shop agreement. The Statutory Construction Act, 1 P.C.S. § 1921(a), requires that every statute shall be construed, if possible, to give full effect to all its provisions. The Administrative Code must, therefore, be construed, if possible, so as not to conflict with the PLRA and Act 111, and we think that that is readily done.

■ Commonwealth Court has misconstrued the nature and function of administrative agency discretion here. Discretion does not entail unbridled freedom for an agency to do absolutely whatever it pleases. Flagrant abuse of discretion, as a matter of law, can occur, and our courts will provide a remedy upon such an occurrence. See, *Petition of Acchione,* 425 Pa. 23, 227 A.2d 816 (1967); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Schwartz, Administrative Law, §§ 217–218 (Little, Brown & Company, 1976). Agency discretion can and, it has been argued, *should* be confined by enactment of agency rules and regulations. See, K. Davis, Administrative Law Treatise, § 4.03 (3rd Edition, West Publishing Co., 1972). Agency rules and regulations, when properly adopted, have the force and effect of law, at least *vis a vis* the administrative agency or body itself, *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 350, 374 A.2d 671, 679 (1977), citing K. Davis, Administrative Law Treatise, § 5.01 (Supp.1976), and hence rein in agency discretion to a significant degree.

■ Under § 711(a) of the Administrative Code, 71 P.S. § 251(a), the Commissioner of the Pennsylvania State Police is authorized to "make rules and regulations, subject to the approval of the Governor, prescribing qualifications prerequisite to, or retention of, membership in the force; for the

enlistment, training, discipline, and conduct of the members of the force; for the selection and promotion of such members on the basis of merit; for the filing and hearing of charges against such members, and such other rules and regulations as are deemed necessary for the control and regulation of the State Police Force."

We think it clear that such rules and regulations, once promulgated, are binding on both the Court-martial Board and on the Commissioner just as statutes would be, and that, given due regard for the facts or evidence in a given proceeding, they would confine and limit the discretion of the Commissioner in reviewing a Court-martial Board recommendation. The Commissioner, in other words, could not ignore or refuse to follow his own rules. Analytically, we see no difference between such rules or regulations, and standards (mandatory or otherwise) adopted as a result of collective bargaining or arbitration duly conducted under statutes authorizing the same (which occurred here). § 711(b) of the Code establishes due process *procedures* for aggrieved members of the State Police force, but cannot legitimately be read to prohibit the normal process of substantive confinement of administrative discretion through rule-making under § 711(a) of the Code, or through collective bargaining or arbitration properly conducted under other statutes. Under the circumstances, the arbitration award of an agency shop was not contrary to the provisions of the Administrative Code. The award must, therefore, be reinstated.

It is so ordered.

HUTCHINSON, J., files a dissenting opinion.

HUTCHINSON, Justice, dissenting.

I respectfully dissent. The majority infringes on the legislative function of determining public policy in respect of labor-management issues by an eclectic juxtaposition of statutory provisions from both private sector and public sector legislation. Such creativity is not our proper function. The constitutional doctrine of separation of powers

requires instead that we in the judicial branch guard the authority of the legislative and administrative branches as zealously as we protect our own.

The recent action of the General Assembly in passing Senate Bill 180, which proposed to amend the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, *as amended*, 71 P.S. §§ 51–732–506 (Supp.1986) to permit the implementation of "agency shops" for the benefit of exclusive employee representatives under the Public Employee Relations Act, Act of July 23, 1970, P.L. 563, No. 195, *as amended*, 43 P.S. §§ 1101.101–1101.2301 (Supp.1986) (Act 195), and its subsequent veto by the Governor demonstrate the extent of the present controversy over this issue. Its resolution calls for political compromise rather than judicial fiat. Even this recently proposed legislation was not intended to apply to the policemen and firemen who are covered by the Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1–217.10 (Supp.1986) (Act 111), rather than Act 195.

Appellant here is the collective bargaining agent for a union, the Fraternal Order of Police, seeking to reinstate an arbitrator's award directing the Commonwealth to implement an agency shop [1] within the State Police. The net effect of such an award will be to enable the union to direct the dismissal of any of those public employees, union or non-union, who fails to pay the dues imposed on union members.

A majority of this Court supports reinstatement of this award by applying language from a 1937 statute establishing the right of collective bargaining among private employers and employees, Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, No. 294, *as amended*, 43 P.S. §§ 211.1–211.13 (PLRA), to the semi-military State Police organization which serves as the principal law enforcement

---

1. "An 'agency shop' agreement generally provides that while employees do not have to join the union, they are required—usually after thirty days—to pay the union a sum equal to the union initiation fee and are obligated as well to make periodic payments to the union equal to the union dues." *Oil Workers v. Mobil Oil Corp.*, 426 U.S. 407, 409 n. 1, 96 S.Ct. 2140, 2141 n. 1, 48 L.Ed.2d 736 (1976).

agency of this Commonwealth. Citing *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board*, 470 Pa. 550, 369 A.2d 259 (1977), to the effect that the PLRA and Act 111 are *in pari materia*, the majority concludes that application of this Latin phrase repeals the definition of "employer"[2] in the PLRA, as well as the requirement that an employee consent to the withholding of dues.[3]

We note, at the outset, that the Rules of Construction require that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). Moreover, "[s]tatutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S. § 1932(a). Finally, except in the case of a total revision of all statutes or an exclusive, uniform or mandatory system of statutes, "a later statute shall not be construed to supply or repeal an earlier statute unless the two statutes are irreconcilable." 1 Pa.C.S. § 1971(c).

When this Court was called upon to construe Act 111 in *Philadelphia Fire Officers, supra*, it invoked the PLRA to supply the absence of a procedure in Act 111 for electing a collective bargaining representative. At that time, Justice Pomeroy, speaking for a unanimous court, said, "We decide today *only* that the Labor Board has jurisdiction under the PLRA of 1937 to conduct a representation election in a unit comprised of firemen and policemen whose collective bargaining with their public employers is governed by Act No. 111." *Philadelphia Fire Officers, supra*, 470 Pa. at 558, 369 A.2d at 263 (emphasis supplied). The PLRA was in no

2. 43 P.S. § 211.3(c).
   When used in this act—
   (c) The term 'employer' includes any person acting, directly or indirectly, in the interest of an employer, but shall not include the United States or the Commonwealth, or any political subdivision thereof, or any municipal authority, or any person subject to the Federal Railway Labor Act or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

3. 43 P.S. § 211.6(1)(f). *See infra*, at 294.

way repealed or affected by the use of its election procedures to implement Act 111 and its Section 3 definition of "employer" still stands. That definition specifically "shall *not* include the United States or the Commonwealth, or any political subdivision thereof." 43 P.S. § 211.3(c) (emphasis supplied). *See supra* at n. 2. This definition thus limits the authority of the PLRA to collective bargaining between private employers and employees.

For this reason, the language in Section 6(1)(c),[4] quoted in part by the majority, applies only to private sector bargaining. Moreover, even in this sector the language of Section (6)(1)(f) precludes an agency shop:

(1) It shall be an unfair labor practice for an employer—

(f) To deduct, collect, or assist in collecting from the wages of employes any dues, fees, assessments, or other contributions payable to any labor organization, unless he is authorized so to do by a majority vote of all the employes in the appropriate collective bargaining unit taken by secret ballot, and *unless he thereafter receives the written authorization from each employe whose wages are affected.*

43 P.S. § 211.6(1)(f) (emphasis supplied).

It could well be argued that the laws dealing with labor-management relations have changed substantially since

---

**4.** The full text reads:
(1) It shall be an unfair labor practice for an employer—
(c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this act, or in any agreement approved or prescribed thereunder or in any other statute of this Commonwealth, shall preclude an employer from making an agreement with a labor organization (not established, maintained or assisted by any action defined in this act as an unfair labor practice) to require, as a condition of employment, membership therein, if such labor organization is the representative of the employes, as provided in section seven (a) of this act, in the appropriate collective bargaining unit covered by such agreement when made and if such labor organization does not deny membership in its organization to a person or persons who are employes of the employer at the time of the making of such agreement, provided such employe was not employed in violation of any previously existing agreement with said labor organization. 43 P.S. § 211.6(1)(c).

1937 and even since 1968. Those changes, however, do not authorize this Court instead of the General Assembly to rewrite public labor policy for the Commonwealth. Section 7 of Act 111 specifically directs the referral of arbitration awards under that Act to the lawmaking bodies of political subdivisions or the Commonwealth with respect to matters which require legislative action:

> (b) With respect to matters which require legislative action for implementation, such legislation shall be enacted, in the case of the Commonwealth, within six months following publication of the findings, and, in the case of a political subdivision of the Commonwealth, within one month following publication of the findings. The effective date of any such legislation shall be the first day of the fiscal year following the fiscal year during which the legislation is thus enacted.

43 P.S. § 217.7(b) (Supp.1986). Thus the General Assembly, not this Court, must determine this type of policy issue. This view was subsequently affirmed by the legislature in Act 195 as well.

Act 195 not only states the public employer's right to hire or fire its employees, 43 P.S. § 1101.706, but explicitly recognizes the legislature's policy-making authority in Sections 804 and 805:

> Nothing in this article shall prevent the parties from submitting impasses to voluntary binding arbitration with the proviso the decisions of the arbitrator which would require legislative enactment to be effective shall be considered advisory only.

43 P.S. § 1101.804.

> Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be

296

final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

43 P.S. § 1101.805. This Court should do no less.

Whether to permit or require an agency shop for police officers is an important policy question as to which basic differences of opinion exist. On the one hand it is argued that all those who benefit from the efforts of the bargaining agent should contribute to it. On the other, it is said that forced contributions to a private body with whose policies an individual is not always in agreement violates a basic individual right to choose freely those organizations one wishes to join and support. Those differences, to my mind, are peculiarly appropriate for resolution by that branch of government closest to the people and inappropriate for the judiciary or an arbitrator. I, therefore, dissent and would affirm.