Herbert L. Stouffer, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent.

Argued May 6, 1982, before President Judge CRUM-LISH, JR. and Judges CRAIG and DOYLE, sitting as a panel of three.

James Victor Voss, with him James R. Mall, Meyer, Unkovic & Scott, for petitioner.

John L. Heaton, Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, August 17, 1983:

Herbert L. Stouffer (Petitioner) appeals here from an order of the Commissioner of the Pennsylvania State Police (Commissioner) which dismissed Petitioner from his position as a State Police lieutenant pursuant to the recommendation of two members of a three member Court-Martial Board. We affirm.

On May 11, 1981, Petitioner was observed leaving a Jamesway store in Meadville, Pennsylvania with several packs of fishing lures he had not paid for. A store security guard subsequently detained him, and after being led to the store's security office, Petitioner signed a card in which he conceded that he had ''shoplifted'' the merchandise. Petitioner was suspended from his job, without pay, as a result of this incident, and on the date of his suspension a citation was issued charging him with the summary offense of retail theft. Following the issuance of a Disciplinary Action Report on May 22, 1981,[1] and Peti-

---

[1] The procedures governing the dismissal of an enlisted member of the State Police by way of a court-martial are specified in Section 711 of The Administrative Code, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. §251.

tioner's conviction before a district magistrate on the charge of retail theft, on June 16, 1981, Petitioner was informed by a letter from the State Police dated June 26, 1981, that he would be court-martialed for an alleged violation of Field Regulation 1-1, Section 1.01,[2] which prohibits members of the State Police from conducting themselves in a manner unbecoming a police officer and Field Regulation 1-1, Section 1.02,[3] which states in part that members of the State Police must abide by the laws of the Commonwealth of Pennsylvania. Two days of hearings on these charges were subsequently conducted before the Court-Martial Board on July 28 and 29, 1981. At these hearings, Petitioner testified (1) that he had taken certain prescription drugs on the morning of May 11, 1981, and again after he had come home from work on that date, (2) that he had been drinking alcohol prior to his May 11, 1981, trip to Jamesway, and (3) that he had no recollection of taking the lures. Petitioner then called a Dr. James Henry Buckholder as a witness who testified that in his professional opinion Petitioner's "irrational behavior" was caused by an adverse reaction between the prescription drugs he had been taking and the alcohol he had consumed. Petitioner also called a Dr. John Edward Blake, a psychiatrist, and Robert E. Devine, a clinical psy-

---

[2] Field Regulation 1-1, Section 1.01 provides:

A Member shall not conduct himself/herself in a manner which is unbecoming to a police officer. Unbecoming conduct is that type of conduct which could reasonably be expected to destroy public respect for State Police officers and/or confidence in the Pennsylvania State Police.

[3] Field Regulation 1-1, Section 1.02 provides:

A Member shall conform to and abide by the laws of the United States, Commonwealth of Pennsylvania, all other states of the United States, and subdivisions thereof.

chologist, as witnesses. Both of these witnesses testified that they believed Petitioner's actions on May 11, 1981, were induced by a psychological condition they referred to as a "fugue" which they attributed to stress Petitioner was suffering from as a result of his heart condition.

Shortly after the conclusion of the July 29, 1981, hearing the Court-Martial Board issued an oral recommendation, which was transcribed into record, in which they made certain findings of fact and conclusions of law. In this recommendation to the Commissioner, the Court-Martial Board stated that the majority of the Board found as facts (1) that Petitioner had intentionally taken the lures, and (2) that the "evidence did not support the theory of nonculpability offered by experts for the defense." The majority of the Board then concluded (1) that Petitioner had committed the act of retail theft, and hence had violated Field Regulation 1-1, Section 1.02, and (2) that Petitioner's conduct in committing retail theft was conduct unbecoming a police officer, and hence, was in violation of Field Regulation 1-1, Section 1.01. The majority of the Board then recommended that Petitioner be dismissed for each of these violations. Subsequent to the issuance of this recommendation, the Court of Common Pleas of Crawford County reversed Petitioner's conviction on the charge of retail theft. Following this reversal, however, the Commissioner adopted the recommendations of the Court-Martial Board, and dismissed Petitioner from his position. The present appeal followed.[4]

---

[4] This Court issued an order dated January 20, 1980, (1) directing Petitioner to file a supplement to his reproduced record, (2) suppressing portions of Petitioner's reproduced record and brief which contained matter not of record, and (3) granting leave to

Before this Court, Petitioner advances numerous allegations of error which we shall address seriatim. We note first, however, that our Supreme Court has recently questioned the procedures employed in the decision-making process involved here. *Soja v. Pennsylvania State Police,* 500 Pa. 188, 455 A.2d 613 (1982). Specifically, the Court, in a plurality opinion,[5] found the internal procedural requirement that all preliminary investigations, reports and recommendations be forwarded to the Commission, to conflict with the Commissioner's adjudicatory role of accepting or rejecting the Court-Martial Board's recommendation. As the proceedings in the instant case predate the Supreme Court's opinion in *Soja,* the procedure found to be defective in that case was still employed. Consequently we will adopt the remedy fashioned by Justice Nix in *Soja* and review the Board's action independent of the Commissioner's final order.[6]

the State Police to address the question of other deficiencies in Petitioner's brief and reproduced record in their brief to this Court. In response to this order, the State Police have raised in their brief to this Court various questions pertaining to the compliance of Petitioner's brief and reproduced record with various Rules of Appellate Procedure. In light of our disposition of this case, we do not believe that it is necessary to address these questions here.

[5] Justice NIX authored the opinion of the Court; McDERMOTT, J., concurred in the result; ROBERTS, J., concurred and filed an opinion in which O'BRIEN, C.J., and HUTCHINSON, J., joined.

[6] After having concluded that the procedure was inherently defective, Justice NIX then dealt with fashioning a proper remedy and stated:

With reference to future matters, we now hold that the disciplinary procedure must be redesigned to exclude this type of information from the Commissioner.

A more difficult question is presented in attempting to fashion the appropriate relief for Mr. Soja. Since his particular defect touches only upon the validity of the Commissioner's action, the taint at that stage does not tarnish

Petitioner first alleges that his due process rights were violated because the Commissioner in this case was biased, and his bias was known to the members of the Court-Martial Board. In support of this assertion, Petitioner cites several statements in his brief which the Commissioner allegedly made at a commanders conference. These alleged statements are not of record, however, and hence cannot be considered here. Additionally, since the issue of bias was not raised below, where a record could have been made on the issues, it cannot be considered here. Section 703(a) of the Administrative Agency Law (Law), 2 Pa. C. S. §703(a); Pa. R.A.P. 302(a).

Petitioner next alleges that the members of the Court-Martial Board were biased by "adverse" publicity which allegedly surrounded this case. Once again, however, this issue was not raised below, and in fact, Petitioner waived his right to challenge the membership of the Board when he was afforded an opportunity to do so. Accordingly, we need not address this issue here.

Petitioner next alleges that his due process rights were violated because the Court-Martial Board (1) failed to appoint an assistant for his attorney, and (2) turned down his request to review an investigative report. We disagree.

Petitioner has cited no authority, nor are we aware of any authority, constitutional or otherwise, which

---

the process prior to that point. It therefore follows that this defect does not establish a predicate for invalidating the action of the Board. If the Board's findings are supported by the record and justify the recommended discipline, then Mr. Soja's rights are protected in this instance by our review independent of the Commissioner's recommendation.

*Soja*, 500 Pa. at 198, 455 A.2d at 617.

requires a court-martial board to appoint an assistant for an employee's counsel. Similarly, we have held that there is no statutory or constitutional directive requiring the disclosure of investigative reports in court-martial proceedings. *Morgan v. Pennsylvania State Police,* 43 Pa. Commonwealth Ct. 345, 402 A.2d 327 (1979).[7] Accordingly, we find no merit in these allegations of error.

Next, Petitioner alleges that his due process rights were violated by the Commissioner and the Court-Martial Board since they failed to base their finding of guilt upon the "beyond a reasonable doubt" standard applicable to criminal cases. We expressly rejected this argument in *Luchansky v. Barger,* 14 Pa. Commonwealth Ct. 26, 321 A.2d 376 (1974), however, noting there that state police court-martial proceedings are administrative in nature, and hence, that findings of guilt need only be supported by substantial evidence. *See also Zeber Appeal,* 398 Pa. 35, 156 A.2d 821 (1959).

Petitioner also alleges that Field Regulation 1-1, Section 1.01, prohibiting conduct "unbecoming to a police officer[,]" is unconstitutionally vague.

The doctrine of vagueness incorporates notions of fair notice or warning. Phrases found in the rules . . . such as . . . "conduct unbecom-

---

[7] In *Soja,* Justice Nix reasoned that the practice of forwarding investigative reports to the Commissioner was constitutionally defective in part because they might form the basis for the Commissioner's decision but would not be accessible to the court-martialled officer. Such reports are not, however, forwarded to the Court-martial Board and do not, therefore, form a basis for the Board's decision. Due process would require access to the reports if they were considered by the decision maker whose action we review. *Soja.* Since here we review the Board's decision, however, the denial of access did not deny due process.

ing an officer'' and conduct ''prejudicial to the good reputation, order or discipline of the department'' are not esoteric. Instead, they are really easily understood and have meaning to the community.

*Corle v. City of Oil City,* 45 Pa. Commonwealth Ct. 559, 563, 405 A.2d 1104, 1106 (1979); *see also Fabio v. Civil Service Commission, City of Philadelphia,* 30 Pa. Commonwealth Ct. 203, 373 A.2d 751 (1977), *aff'd,* 489 Pa. 309, 414 A.2d 82 (1980). As our Supreme Court stated in *Fabio:*

> Although at first blush a law may appear vague on its face and those subject to it without fair notice, however, it may withstand a constitutional challenge if it has been narrowed by judicial interpretation, custom and usage. . . .
>
> . . . .
>
> In Pennsylvania, our court's continuous construction of the phrase ''conduct unbecoming an officer'' has resulted in refining the offense to a clearly discernable standard. In Zeber Appeal, 398 Pa. 35, 156 A.2d 821 (1951), we enunciated that:
>
> Unbecoming conduct on the part of a municipal employee, especially a policeman . . . is any conduct which adversely affects the morale or efficiency of the bureau. . . . It is indispensable to good government that a certain amount of discipline be maintained in the public service. Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees. . . .
>
> *Id.* at 43, 156 A.2d at 825.

*Id.* at 315-317, 414 A.2d at 85-86 (footnote and citations omitted). Here, we do not believe that Petitioner can

fairly claim that he was unaware of the fact that shoplifting would fall within the widely recognized definition of conduct unbecoming an officer, and hence, we must reject his vagueness challenge.

Petitioner's next challenge of error is that the Court-Martial Board abused its discretion by failing to grant a request for a continuance filed by Petitioner's attorney on July 22, 1981.

"It is well settled [of course] that the grant or refusal of a continuance rests in the discretion of the court or administrative agency to which the application is made, and its exercise of this discretion will not be reviewed except in clear cases of abuse." *Blackledge v. Pennsylvania State Police*, 62 Pa. Commonwealth Ct. 188, 191, 435 A.2d 309, 311 (1981); *Cotter v. State Civil Service Commission*, 6 Pa. Commonwealth Ct. 498, 297 A.2d 176 (1972). Here, Petitioner's attorney based his request for a continuance on the grounds that he needed additional time to prepare a defense. Petitioner has failed to allege in his brief, however, and our review of the record fails to reveal any specifics as to exactly how Petitioner's case was prejudiced by the denial of the continuance. The record discloses that on June 26, 1981, the Petitioner was advised by letter from the Court-Martial Coordinator that he should secure legal counsel in accordance with the Court-Martial Manual. That letter further advised, "Your failure to arrange immediately for defense counsel will not be grounds for a continuance at a later date." Again, on July 13, 1981, in a memorandum from the Commissioner, the Petitioner was specifically informed: "It is incumbent upon you to make the necessary arrangements for your counsel inasmuch as there will be no continuance granted for this Court-Martial at a later date." Ac-

cordingly, we believe that the Court-Martial Board did not abuse its discretion in refusing the request for a continuance in this case.

Petitioner next asserts that the State Police's Court-Martial Manual, which sets forth certain procedural rules to be followed in court-martial proceedings, is not *on file*[8] with the Legislative Reference Bureau, and hence, is not valid. *See* Section 208 of the Act of July 31, 1968 (Act), P.L. 769, *as amended,* 45 P.S. §1208. Even if we were to accept Petitioner's assertion, however, that the Court-Martial Manual is not a valid regulation, it is axiomatic that we could not reverse his dismissal on this basis absent some allegation that the provisions of the Court-Martial Manual were applied to him in some detrimental manner. Here, the only allegation of harm advanced by Petitioner is that the Court-Martial Manual fails to provide for a "beyond a reasonable doubt" standard of review. As we have noted above, however, the "beyond a reasonable doubt" standard of review is inapplicable to court-martial proceedings because they are civil in nature, and not because of any provision in the Court-Martial Manual.[9] We

---

[8] In this Court's opinion in *Soja,* 43 Pa. Commonwealth Ct. 226, 402 A.2d 281 (1979) we held that State Police regulations dealing with agency personnel, practice and procedure need not be published pursuant to Section 204 of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §1204.

[9] In 1959, Justice COHEN, writing for the Supreme Court in *Zeber,* stated:

It is elementary that the measure of proof to convict for a criminal offense is substantially different and greater than necessary to support the dismissal of a municipal employee. It is sufficient that the complained of conduct and its attending circumstances be such as to offend publically accepted standards of decency.

*Zeber Appeal,* 398 Pa. 35, 43, 156 A.2d 821, 825 (1959). In 1974 we wrote in *Luchansky,*

therefore fail to see the pertinence of the question of whether the Court-Martial Manual is a valid regulation under the provisions of the Act in this case.

Having disposed of the various allegations of error discussed above, we must now turn to Petitioner's assertion that the Board capriciously disregarded evidence indicating that his actions on May 11, 1981, were involuntary.[10]

"As we have said many times, [a] capricious disregard of evidence is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have disregarded in drawing a conclusion." *Philadelphia County Board of Assistance v. Unemployment Compensation Board of Review*, 64 Pa. Commonwealth Ct. 451, 454, 440 A.2d 693, 695 (1982).

Here, although Petitioner presented medical evidence suggesting that his actions in the shoplifting incident were involuntary, the State Police presented evidence, in the form of the testimony of Jamesway's

---

Despite the trappings of a criminal case with which State Police Court-martial proceedings are invested by the Commissioner's regulations, the cause remains administrative in nature; it is simply the means by which a possible personnel action affecting the member of the Force charged with wrongdoing is determined.

*Luchansky v. Barger*, 14 Pa. Commonwealth Ct. 26, 35, 321 A.2d 376, 380 (1974).

10 Our general appellate scope of review is one of substantial evidence to support the Commissioner's, or in this case the Board's, findings and conclusions. However, since the petitioner has the burden to assert the affirmative defenses which are the subject matter for the appeal, he correctly argues in this regard that there was a capricious disregard of other competent testimony which, if believed, would result in a reversal of the fact finder. *See Graci v. Pennsylvania State Police*, 14 Pa. Commonwealth Ct. 630, 324 A.2d 887 (1974) ; *Luchansky v. Barger*, 14 Pa. Commonwealth Ct. 26, 321 A.2d 376 (1974).

security officer, who observed Petitioner taking the lures, and the testimony of two other Jamesway employees, who observed Petitioner both before and after he was apprehended, which suggested that Petitioner was aware of his actions. After evaluating this evidence, the Court-Martial Board, in the exercise of its fact finding function, simply found the evidence submitted by the State Police to be more credible than the evidence submitted by Petitioner. Since, as we have repeatedly recognized, an administrative tribunal does not capriciously disregard evidence when, in the exercise of its fact finding function, it accords greater credibility to certain witness' testimony than to that presented by others, we believe the Court-Martial Board's findings cannot be disturbed here. *Borough of Tyrone v. Unemployment Compensation Board of Review*, 52 Pa. Commonwealth Ct. 18, 415 A.2d 146 (1980).

Finally, Petitioner alleges abuse of discretion in the imposition of the penalty of dismissal instead of some lesser penalty. In light of the serious nature of the offense, however, and Petitioner's rank as a lieutenant and commanding officer of the State Police's Meadville substation, we do not believe that the Board's action can be characterized as an abuse of discretion.[11]

In summary, since the record before us contains substantial evidence to support the Board's recommendation to dismiss Petitioner, and since our review of the record has failed to reveal any error of law or violation of constitutional rights, we will affirm.

---

[11] In his brief to the Court, Petitioner also alleges that the State Police violated certain provisions of their Field Regulations by not suspending him *with* pay. Petitioner failed to challenge that action below, however, and accordingly this issue is not before us.

ORDER

Now, August 17, 1983, the order of the Commissioner of the Pennsylvania State Police, dated August 27, 1981, dismissing Lieutenant Herbert L. Stouffer from service in the Pennsylvania State Police, is affirmed.