Henry H. Brown, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent.

Argued September 12, 1984, before Judges WILLIAMS, JR., CRAIG and DOYLE, sitting as a panel of three.

*Harold I. Goodman,* for petitioner.

*Joel M. Ressler,* Deputy Attorney General, with him, *Allen C. Warshaw,* Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, October 31, 1984:

Henry H. Brown appeals an order of the Pennsylvania State Police Commissioner Daniel F. Dunn dismissing Brown from his position as sergeant. The commissioner's order was based on the recommendation of the Pennsylvania State Police Court Martial Board which conducted a hearing on charges that Brown violated the state police field regulations concerning unbecoming conduct,[1] conformance to laws,[2] and competence.[3]

The first two charges arose out of an incident which occurred on February 23, 1983. Although there is conflicting testimony regarding the events

---

[1] Field Regulation 1-1, §1.01 provides:
A member shall not conduct himself/herself in a manner which is unbecoming to a police officer. Unbecoming conduct is that type of conduct which could reasonably be expected to destroy public respect for State Police officers and/or confidence in the Pennsylvania State Police.

[2] Field Regulation 1-1, §1.02 provides:
A member shall conform to and abide by the laws of the United States, Commonwealth of Pennsylvania, and other states of the United States, and subdivisions thereof.

[3] Field Regulation 1-2, §2.04.

of that evening, substantial evidence supports the board's findings that during an altercation between Brown and a female acquaintance on a street in the city of Lancaster, Brown engaged in threatening and physically abusive action.[4] His actions and loud words prompted people nearby to summon the Lancaster police. Brown argued with the responding officers, who took him into custody for disorderly conduct, but soon released him without filing formal charges. The board concluded (1) that Brown had conducted himself in a manner unbecoming a police officer, and, (2) having engaged in disorderly conduct under section 5503 of the Pennsylvania Crimes Code, was therefore in violation of the conformance-to-laws field regulation.

In passing on the third charge facing Brown, the board reviewed his past disciplinary action reports relevant to the board's consideration of the charge of incompetency; the applicable field regulation provides that a written record of disciplinary actions detailing repeated infractions is prima facie evidence of incompetence.

Despite documentation of twenty instances of disciplinary action during Brown's fifteen years with the state police, the board voted 2 to 1 against a find-

---

[4] Cecilia Santiago who observed Sergeant Brown and his girl friend from inside an automobile, testified as follows:

So he punch her in the ribs. She bend down. He pull her by her hair back again and punch her in the face with the left hand closed . . . so she try and escape from him, and halfway in the middle block, she try to cross the street and he pull her hair back to the sidewalk and push her to the wall. Right there, she touch her face, bend down her head. She fell to the floor and he kicked her in the back. . . . Well, he was talking nasty words to her. From the time he talking nasty to her, he keep punching her. . . . He was saying "What the fuck you think you are?"

ing of incompetence. The board imposed a thirty-day suspension for the conformance-to-laws violation, but recommended that the commissioner dismiss Brown for unbecoming conduct, which the commissioner did.

In addition to objecting substantively to the board's findings and the commissioner's exercise of discretion, Brown contends that the court martial board proceeding was constitutionally defective in several respects.

Brown's first argument is that the state police denied him due process of law by failing to redesign its court martial procedures, particularly provision 7-2, paragraph E.2.a of the Operations Manual of the Pennsylvania State Police, which a plurality of the Pennsylvania Supreme Court held unconstitutional in *Soja v. Pennsylvania State Police*, 500 Pa. 188, 455 A.2d 613 (1982).[5] That provision required that all preliminary investigative reports be forwarded to the commissioner if the troop commander recommends disciplinary action.

At the board hearing, Brown introduced a copy of the provision included in the Operation Manual on June 28, 1983 which was identical to the provision proscribed by the Supreme Court in *Soja*. However, that evidence did not prove what the manual provided on October 4, 1983 when Brown's court martial proceedings began, nor did it establish what procedures were in fact followed at that time generally, or in this particular case. The appropriate inquiry is not whether the challenged provision is unconstitutional; the Supreme Court so held in *Soja*. Rather,

---

[5] Justices LARSEN and FLAHERTY joined the opinion of Justice NIX, and Justice McDERMOTT concurred in result only. Chief Justice O'BRIEN and Justice HUTCHINSON joined Justice ROBERTS' concurring opinion which did not find the challenged State Police procedure unconstitutional.

Brown had the burden of showing that the state police actually followed the unconstitutional procedure in this case. In the absence of any evidence establishing what procedure was in effect at the time pertinent here, and without evidence that the commissioner did in fact receive the controversial reports, we cannot conclude that the State Police violated Brown's due process rights in this respect.[6]

Brown also argues that the State Police did not institute the court martial proceeding in compliance with section 205 of the Administrative Code which provides:[7]

No enlisted member of the Pennsylvania State Police shall be dismissed from service or reduced in rank except by action of a court martial board held upon the recommendation of the commissioner of the Pennsylvania State Police and the Governor.

However, we note that Brown did not raise before the board the issue of whether the Governor did in fact approve convening of the court martial board.[8] Therefore, that issue is not properly before us.[9]

----

[6] Our disposition of this issue is in accord with an earlier order of this court by Judge LEHMAN which denied the Commonwealth's motion to remand to present evidence concerning the commisioner's practice regarding review of general investigation reports. Judge LEHMAN's denial was based on his conclusion that Brown's petition for review did not raise that issue, but rather alleged only that the challenged provision was unconstitutional on its face.

[7] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §65(e).

[8] At the start of the hearing, Brown's counsel stated to the board:

As you know, before a court martial can take place, it requires the recommendation of the Governor of the Commonwealth. In this case, it was secured.

[9] Brown's failure to raise this issue before also moots his petition for correction of the record, which we will, therefore, dismiss.

Brown also argues that section 205 of the Administrative Code requires that the Governor consider all material facts before issuing his approval to convene a court martial board, and that the State Police therefore deprived Brown of his due process rights by failing to grant his request to forward to the Governor his response to the charges and specifications. In *Pennsylvania State Police v. Swaydis*, 504 Pa. 19, 470 A.2d 107 (1983), our Supreme Court held that, under section 205, the fact that criminal charges have been dismissed against a state police officer is not material to the Governor's decision to approve convening the court martial board, because dismissal of criminal charges is not dispositive of court martial charges arising from the same facts. The court stated:

> The memorandum from the Commissioner to the Governor, describing specific acts of misconduct of which Swaydis could be accused in a court martial proceeding enumerated specific Pennsylvania state field regulations alleged to have been violated by Swaydis. Violations of those regulations supplied the basis for a court martial proceeding to be convened.

*Id.* at   , 470 A.2d at 109.

The Governor's role at this level is not to weigh conflicting evidence and issue an ultimate adjudication of guilt or innocence, but only to make a preliminary determination as to whether the charges warrant convening the court martial board, analogous to a determination of probable cause to issue an arrest warrant. *See* Pa. R. Crim. P. 119. To require the Governor to consider an accused officer's version of the facts would needlessly thrust upon the Governor an adjudicatory function not intended by section 205.

Another objection by Brown, which the court martial board overruled during the hearing, concerned the prosecutor's statement that he, rather than Brown's troop commander Wayne Kerr, prepared the specifications and charges. Brown argues that Kerr's assignment of his duty to draft the charges to the prosecuting attorney was a "commingling of functions" which deprived Brown of an independent review by Commander Kerr before deciding to file charges.

Brown's reliance on *Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1976), and *Abramovich v. Pennsylvania Liquor Control Board,* 490 Pa. 290, 416 A.2d 474 (1980), which involved impermissible commingling of prosecutory and adjudicatory functions of the Pennsylvania State Police Commissioner and a Pennsylvania Liquor Control Board arbitrator, respectively, is misplaced. Drafting the charges and specifications did not constitute an adjudication of those charges, and, unlike *Dussia* and *Abramovich,* the person functioning as an advocate here did not also serve as the ultimate arbiter of facts.

Brown's further contention that the guilt and sentencing phases of the court martial proceeding should have been bifurcated is also unpersuasive. Brown points to the fact that although the board found him not guilty on the incompetency charge, in recommending dismissal, the board had before it his past disciplinary action reports, which he equates with pre-sentence reports in the criminal sphere. However, a court martial proceeding is administrative rather than criminal, *Luchansky v. Barger,* 14 Pa. Commonwealth Ct. 26, 321 A.2d 376 (1974), with corresponding burdens of proof and remedies which do not require the strict guarding of the accused's rights that may be jeopardized in a criminal proceeding.

This case is quite similar to *Stouffer v. Commonwealth, Pennsylvania State Police,* 76 Pa. Commonwealth Ct. 397, 464 A.2d 595 (1983), where evidence of retail theft formed the basis of charges against a state police lieutenant for violating the unbecoming conduct and conformance-to-laws field regulations. Although a common pleas court reversed criminal charges arising out of the theft, the state police commissioner ordered the lieutenant dismissed, and this court affirmed.

Similarly here, we must conclude that substantial evidence supports the board's findings and conclusions, that the findings are technically adequate, and that the commissioner did not abuse his discretion in adopting those findings and recommending dismissal.

Accordingly, we affirm.

### ORDER

Now, October 31, 1984, the order of the Pennsylvania State Police Commissioner Daniel F. Dunn, dated November 3, 1983 dismissing Sergeant Henry H. Brown, is affirmed, and the petition for correction of the record is dismissed.