502 A.2d 126

**Henry H. BROWN, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA STATE POLICE, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1985.

Decided Dec. 6, 1985.

Harold I. Goodman, Philadelphia, for appellant.

Joel M. Ressler, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

We granted the petition for allowance of appeal of Henry H. Brown to consider the propriety of a Commonwealth Court panel's affirmance of Sgt. Brown's dismissal from the Pennsylvania State Police. Sgt. Brown was charged with violating state police field regulations concerning unbecoming conduct, conformance to laws and competence.[1] The

---

1. Field Regulation 1–1, § 1.01 provides:
A member shall not conduct himself/herself in a manner which is unbecoming to a police officer. Unbecoming conduct is that type of conduct which could reasonably be expected to destroy public respect for State Police officers and/or confidence in the Pennsylvania State Police.
2. Field Regulation 1–1, § 1.02 provides:

facts are aptly set forth in the lower court opinion as follows:

> The first two charges arose out of an incident which occurred on February 23, 1983. Although there is conflicting testimony regarding the events of that evening, substantial evidence supports the board's findings that during an altercation between Brown and a female acquaintance on a street in the city of Lancaster, Brown engaged in threatening and physically abusive action.[4] His actions and loud words prompted people nearby to summon the Lancaster police. Brown argued with the responding officers, who took him into custody for disorderly conduct, but soon released him without filing formal charges. The board concluded (1) that Brown had conducted himself in a manner unbecoming a police officer, and, (2) having engaged in disorderly conduct under section 5503 of the Pennsylvania Crimes Code, was therefore in violation of the conformance-to-laws field regulation.
>
> In passing on the third charge facing Brown, the board reviewed his past disciplinary action reports relevant to the board's consideration of the charge of incompetency; the applicable field regulation provides that a written record of disciplinary actions detailing repeated infractions is prima facie evidence of incompetence.
>
> Despite documentation of twenty instances of disciplinary action during Brown's fifteen years with the state police, the board voted 2 to 1 against a finding of incompetence. The board imposed a thirty-day suspension for the conformance-to-laws violation, but recommended that the commissioner dismiss Brown for unbecoming conduct, which the commissioner did.

[4] Cecilia Santiago who observed Sergeant Brown and his girl friend from inside an automobile, testified as follows:

> So he punch her in the ribs. She bend down. He pull her by her hair back again and punch her in the face with the left hand closed

A member shall conform to and abide by the laws of the United States, Commonwealth of Pennsylvania, and other states of the United States, and subdivisions thereof.

*Brown v. Com., Pennsylvania State Police*, 85 Pa. Commonwealth Ct. 643, 644, 482 A.2d 1360, 1361 (1984).

... so she try and escape from him, and halfway in the middle of the block, she try to cross the street, and he pull her hair back to the sidewalk and push her to the wall. Right there, she touch her face, bend down her head. She fell to the floor and he kicked her in the back.... Well, he was talking nasty words to her. From the time he talking nasty to her, he keep punching her.... He was saying "What the fuck you think you are?"

*Id.* at 644–646, 482 A.2d at 1361 (1984).

■ Appellant first asserts he was denied due process of law in that the state police "fail[ed] to ensure that investigative reports, not made part of the record, were kept from the Commissioner." The practice assailed by appellant was formerly prescribed in the State Police Operations Manual, 7–2, p. 23.4, ¶ (E)2A which provided in relevant part:

When the investigation involves Department personnel, the original copy, with in-depth endorsements by the Trooper Commander and Area Commander, shall be forwarded through channels to the Commissioner. A reproduced copy of the report, with an in-depth endorsement by the Troop Commander, shall be immediately forwarded under separate cover directly to the Commissioner ONLY when the results of the investigation substantiate the complaint and/or Disciplinary Action is recommended.

The foregoing was dealt with in *Soja v. Pennsylvania State Police*, 500 Pa. 188, 193 n. 1, 455 A.2d 613, 615 n. 1 (1982), wherein the practice of providing confidential, preliminary investigative reports to the Commissioner, the ultimate arbiter in matters courts martial, prior to commencement of the hearing, was held to be violative of due process as it invites imposition of discipline based on information which the employee is powerless to refute and which escapes review by a reviewing court. We, thus, directed the state police to redesign their disciplinary procedures to prevent the Commissioner's review of investigative reports in advance of the imposition of discipline. We continue to adhere to our ruling in *Soja*.

The instant controversy arises because the pertinent provision of the State Police Manual was not revised in accordance with our directive in *Soja* until October 28, 1983, ten months after *Soja* and nearly three weeks after appellant's

court martial. Thus, on its face, the technical requirement of *Soja,* to-wit, revision of the manual, was not complied with in this case. However, the record contains sworn testimony of the Trial Judge Advocate that the spirit of *Soja* has been complied with at all times since the date of that decision.[2] As the underlying incident giving rise to these proceedings did not occur until February 23, 1983, almost two months after the date of our decision in *Soja,* on this record we must presume that the state police complied with the spirit of that ruling. *Quod fieri debet facile praesumitur.*

 Appellant argues the failure of the state police to forward appellant's own version of the incident of February 23, 1983 to the Governor when approval for the court martial was sought denied him due process of law. This argument is without merit. The court-martial board is the body charged with the responsibility to hear all evidence, resolve issues of credibility and make factual findings, 71 P.S. § 251(b)(2) (Supp.1985). Because the Governor's involvement is limited to review of written statements, he is powerless to resolve the issues of credibility that would necessarily result from being presented with two versions of the underlying incident. Thus, presenting the Governor with the employee's version of the incident out of which court-martial proceedings are urged cannot further a determination of the question whether seeking the employee's termination from the force is warranted. As artfully stated by Judge Craig, below: "The Governor's role at this level is not to weigh conflicting evidence and issue an ultimate adjudication of guilt or innocence, but only to make a preliminary determination as to whether the charges warrant convening the court martial board, analogous to a determination of probable cause to issue an arrest warrant.

**2.** Former Commissioner Dunn filed an affidavit in Commonwealth Court attesting to the fact that since January of 1983 he had not reviewed preliminary, investigative reports regarding non-probationary enlisted members, and especially denying having reviewed any report involving appellant. This affidavit was not part of the original record of the court martial proceeding proper.

*See* Pa.R.Crim.P. 119. To require the Governor to consider an accused officer's version of the facts would needlessly thrust upon the Governor an adjudicatory function not intended by section 205 [of the Administrative Code, 71 P.S. § 65(e) ]." *Brown v. Comm., Pennsylvania State Police,* supra, 85 Pa. Commonwealth Ct. at 648, 482 A.2d at 1363. *Cf. Comm., Pennsylvania State Police v. Swaydis,* 504 Pa. 19, 470 A.2d 107 (1983) (fact that criminal charges, upon which was based court-martial proceeding, were dismissed was not material fact to be considered by Governor in deciding whether to approve court-martial proceeding, and failure to provide notice of same to Governor did not render court-martial proceeding void.)

Next appellant challenges the failure of the *Commissioner* to make detailed findings of fact and conclusions of law. 2 Pa.C.S.A. § 507 (Supp.1985) provides:

### § 507. Contents and service of adjudications

All adjudications of a Commonwealth agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail.

Act of April 2, 1978, P.L. 202, No. 53, § 5. Essentially appellant's argument is that as it is the order of the Commissioner imposing discipline which is the order appealed, the Commissioner has a duty to render findings of fact and conclusions of law in support of his order.

 Given that it is the court-martial board which swears witnesses and hears testimony, fact finding in court-martial proceedings is accomplished by the board. The board's findings of fact, conclusions of law, and recommendations of discipline are then forwarded to the Commissioner for imposition of appropriate discipline. Under the circumstances, working with only a cold record from the proceeding below, the Commissioner will usually not be in a position to render independent findings of fact. In imposing discipline, however, he must review the record, findings and conclusions of the court-martial board. In connection with his independent review, he could determine that some

or all of the findings and conclusions of the board were without support in the record, or resulted from a mistake of law, as could any reviewing court. When the Commissioner imposes discipline, he may disregard the recommendation of the board and render discipline which is either more or less severe than that recommended by the board. His ultimate decision, accepting or rejecting the board's recommendation, could be based upon an independent policy determination regarding the suitability of the discipline, or upon his determination of the propriety of the findings and conclusions of the board. In either case, unless the Commissioner states the reasons for the imposition of the discipline chosen, the precise basis for that determination is unknown by the employee so disciplined.

 2 Pa.C.S.A. § 101 defines "adjudication" as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding...." Act of April 28, 1978, P.L. 202, No. 53, § 5 (Supp.1985). Thus, it is obvious that it is the decision of the Commissioner finally imposing discipline in the matter which forms the adjudication in court-martial proceedings. See, *Begis v. Industrial Bd. of the Dept. of Labor and Industry,* 9 Pa. Commonwealth Ct. 558, 308 A.2d 643 (1973). The requirement of § 507, that all adjudications contain the "findings and reasons for the adjudication," can only be met when the Commissioner's decision contains a statement whether he adopted the findings and conclusions of the board or made his determination on some other basis. This was not done in this case. Instantly, the Commissioner's adjudication merely stated whether the board found appellant guilty or not guilty of each of the charges, reiterated the board's recommendation of dismissal, and ordered that appellant be dismissed. Whether the Commissioner adopted the board's findings and conclusions is unknown on this record.

In accordance with the requirement of 2 Pa.C.S.A. § 507 we are remanding the record to the Commissioner for

amendment of his adjudication in compliance with § 507.[3] We relinquish jurisdiction.

3. Appellant has also assailed the failure of the state police to get approval of the Governor prior to the court-martial proceeding, the timeliness of the Governor's approval, the failure of the state police to introduce the letter of approval of the Governor at the court-martial proceeding, the admission of other disciplinary action reports into evidence during the court-martial, the failure of the state police to afford a proceeding bifurcated as to the questions of liability and discipline, the adequacy of the board's findings and conclusions, and the sufficiency of the evidence. We have reviewed these claims and found them to be without merit.