521 A.2d 970

Newton Tattrie (Geto Mongol), Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Athletic Commission, Respondent.

Argued November 18, 1986, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BAR-BIERI, sitting as a panel of three.

*George John Steffish, III,* for petitioner.

*Mary S. Wyatte,* Assistant Counsel, with her, *David F. Phifer,* Chief Counsel, for respondent.

OPINION BY JUDGE COLINS, February 27, 1987:

Newton Tattrie (petitioner), a licensed wrestling promoter in the State of Pennsylvania, formerly a professional wrestler who wrestled under the nom de guerre of Geto Mongol, was notified on July 15, 1985, that his license to promote wrestling was temporarily suspended by the Pennsylvania State Athletic Commission (Commission) pursuant to the Pennsylvania Athletic Code (Code), Act of August 31, 1955, P.L. 531, *as amended,* 4 P.S. §§30.101-30.905. A hearing was subsequently held, after which the Commission determined

that the petitioner had flagrantly violated the Code, and permanently revoked his promoter's license. The petitioner has appealed this revocation to this Court.

The factual matrix from which the petitioner's license revocation resulted was as follows. On May 4, 1985, the petitioner promoted and conducted a wrestling bout at the Blackhawk High School in Beaver Falls, Pennsylvania. Present at this event, among others, were a Deputy for the Commission, a referee, and a physician. Section 204 of the Code, 4 P.S. §30.204, requires that a physician shall be assigned to every wrestling contest or exhibition by the Commission. Likewise, Section 210 of the Code, 4 P.S. §30.210, requires that a referee duly licensed and appointed by the Commission shall direct and control the contest or exhibition. The promoter is required to pay the fees of both the physician and the referee.

A Deputy Commissioner is assigned to each wrestling event by the Commission, and his duties, enumerated in Section 3.2 of the Athletic Commission Regulations, 58 Pa. Code Section 3.2, are, in pertinent part, as follows:

(e) Subject only to the direction of the Commission, the chief deputy commissioner shall have complete authority over the following:

. . .

(7) The collection of all fees, including the following:

(i) Special license fees.

(ii) Other monies due the Commonwealth.

. . .

(9) The payment of purses and other monies due participants and fees and expenses due officials.

. . .

(f) The chief deputy commissioner shall file with the Commission an official report of attend-

ance, gross receipts, net receipts, fees and other monies collected, names and pairings of participants, names of officials, and results of all bouts as determined by official decision after each event under the jurisdiction of the Commission.

At the intermission of the match, the Deputy Commissioner approached the petitioner and requested that he pay the doctor's fee and referee's fee, of $150.00 and $100.00 respectively. The petitioner refused to pay the requested fees because he felt that they were unreasonable. He testified before the Commission that past practice, to his knowledge, had been to pay the physician $100.00 and the referee $60.00. The defendant did in fact pay the referee $60.00 which was accepted under protest. However, the physician refused to accept merely $100.00 and left the match. Another doctor in attendance at the match finished the event for the petitioner.

On June 28, 1985, the petitioner was scheduled to promote and conduct a professional wrestling show at Shram Hall, Mt. Washington, Pennsylvania. The petitioner obtained the necessary permit, pursuant to Section 306 of the Code, 4 P.S. §30.306, prior to the aforementioned event. He specifically requested that the Commission not appoint the same referee who had presided at the Blackhawk exhibition, due to petitioner's professional and personal differences with this particular referee. He also requested that he be permitted to find his own doctor. Petitioner testified that the Commission permitted him to choose his own doctor. However, they appointed the same referee who had presided at the Blackhawk event to preside at the match at Shram Hall. The petitioner refused to use this referee. He was advised that if he did not use Commission officials, his permit would be withdrawn and that he would face disciplinary sanctions if he proceeded with the show. Nonetheless, the petitioner proceeded to conduct the

show with officials of his own choosing. His license was subsequently suspended, and after a hearing, revoked. This appeal followed.

The petitioner presents this Court with five issues, which we shall discuss *seriatim*. The first of these issues is whether the Commission has jurisdiction over professional wrestling shows of the sort conducted by the petitioner. Section 201 of the Code, 4 P.S. §30.201, specifically provides that the Commission is granted "sole direction, control and jurisdiction over all amateur and professional boxing and wrestling contests and exhibitions or any variations thereof held within the Commonwealth of Pennsylvania, except such contests and exhibitions as are specifically exempted from the provisions of this Act." Section 202 of the Code, 4 P.S. §30.202, further provides that all "amateur or professional boxing or wrestling contests or exhibitions, including kick boxing, shall be held within the Commonwealth of Pennsylvania only in accordance with the provisions of this Act and the rules and regulations promulgated hereunder." The Athletic Code provides:

> The following fouls and dangerous and unsportsmanlike practices are prohibited in all wrestling bouts in this Commonwealth:
>
> (1) The pulling of equipment, hair or any part of the body where the force applied is related to physical sensitivity rather than to true wrestling leverage.
>
> (2) The twisting of fingers and toes, striking with the fist; kicking, stomping, kneeing.
>
> (3) Choking and gouging.
>
> (4) Holds endangering life or tending to cause fracture or dislocation of limbs.
>
> (5) Punishment holds.
>
> (6) Body slamming where the head strikes the floor first.

(7) Collapsing a bridge by applying force toward the head.

(8) Entangling an opponent in the ropes.

(9) Throwing or ramming an opponent into a ring post.

(10) Pressing the head of an opponent over the ropes or against the turn-buckles or ring posts.

(11) Use of any powder, ointment or other substance intended or likely to cause danger or discomfort to an opponent.

(12) Use of any abrasive tape, bandage or apparel.

58 Pa. Code §31.14(b).

The petitioner disingenuously suggests that no professional wrestling contest or exhibition abides by these stated regulations, and since it can be presumed that the Commission cannot ignore its own regulations, then the Commission must not have jurisdiction over such professional wrestling shows. It must be noted that professional wrestling contests and exhibitions are a form of entertainment. They specialize in arousing the primal instincts of their spectator audience with a curious blend of pathos and bathos. Much of the audience's delight is derived directly from the participants' bodily contortions, convulsions, and connivances, and, ultimately, that state of agony which is defeat. In short, without waxing prosaic, we must state that a great part of the populace's pleasure with professional wrestling involves its delight in the infliction of bodily pain.

Merely because it is the inherent nature of professional wrestling to delight its audiences in such fashion does not necessarily mean that such regulations as those quoted above are for naught. They have been promulgated to prevent an amusement and entertainment from becoming a deadly pastime. The Commission has not

abrogated any of its jurisdiction over professional wrestling contests and exhibitions merely because, for the sake of entertainment, some degree of "foul" play may take place. The statute is perfectly clear in that the Commission has sole jurisdiction over *all* wrestling contests and exhibitions or any variations thereof. Petitioner does not dispute that his activities are some form of wrestling. Therefore, even if they in some measure depart from the above regulations, such does not remove them from the jurisdiction of the Commission. We, therefore, reject Petitioner's first jursidictional argument.

Secondly, the petitioner raises a further jursidictional matter, specifically whether the Commission must hold a hearing within ten (10) days after the revocation of a permit, in order to have the subject matter jurisdiction to permanently revoke a promoter's license. Section 703 of the Code, 4 P.S. §30.703, specifically provides that the Commission shall hold a hearing within ten (10) days after the date on which the license or permit was suspended temporarily. This hearing must be held in compliance with the provisions of the Administrative Agency Law. The petitioner was indeed informed immediately prior to the show on June 28, 1985, that his permit to hold such show was revoked because of his refusal to use the Commission appointed referee. However, his license to promote wrestling in the Commonwealth was not suspended until July 15, 1985. In this letter, the petitioner was specifically informed that his license to conduct further wrestling contests and exhibitions was temporarily suspended pending a hearing. It is conceded that a hearing was timely held after receipt of the letter of July 15, 1985. A license and a permit are distinct creatures. It was the license which was at issue, not the revocation of the permit. We thus find that the Commission had subject matter jurisdiction to consider the petitioner's alleged violations of the Code.

Next, the petitioner presents this Court with an argument in defense of his refusal to use the Commission appointed referee at the Shram Hall exhibition. Petitioner argues that because the Commission appointed a referee who was also a licensed wrestler within the Commonwealth of Pennsylvania, there was a conflict of interest between the referee acting as a referee and as a wrestler, which gave the appearance of impropriety to his position as a referee. Petitioner then argues that he should not be penalized for the efforts he made to avoid this appearance of impropriety and conflict of interest.

There is no evidence in the record that the referee in question had any intentions of wrestling at an exhibition at which he was a referee. Merely because he was licensed as a wrestler, and may have wrestled at other exhibitions, does not create a conflict of interest. Therefore, we reject this argument of petitioner.

In defense of his failure to pay the fees requested by the Commission at the Blackhawk High School match, petitioner asserts that the Commission only has the ability to promulgate regulation setting fees for wrestling contests. The Commission classified the petitioner's shows as "exhibitions." The petitioner thus reasons that the Commission is not empowered to set fees for his shows because they were exhibitions, and cites in support of this argument Section 212 of the Code, 4 P.S. §30.212. Section 212 of the Code specifically provides: "The Commission shall promulgate rules and regulations regulating the length of professional wrestling contests and exhibitions." Thus, the Code specifically provides for regulations for exhibitions as well as for contests, and petitioner's argument in this regard is without merit.

This brings us to the more problematic issue of this case, specifically, whether the Commission has been statutorily derelict in its duty to provide a written fee

schedule, and, if so, can the Commission revoke a promoter's license for his refusal to pay appointed officials whatever the Commission decides is a fair wage at the match itself. Section 204 of the Code, 4 P.S. §30.204, specifically provides "the Commission shall establish by rule or regulation a schedule of fees to be paid such physicians for their services." The Commission, via its brief, concedes that it has not yet established by rule and regulation a schedule of fees to be paid to physicians for their ringside services pursuant to the Code. The Athletic Code merely provides that the Commission shall assign a physician to serve at ringside and will set the fees to be paid by the promoter to the physician. 58 Pa. Code §3.3(a) and (b). It must be noted that in this case the petitioner was not informed of what the fee for the physician would be until the intermission of the Blackhawk match. The Commission asserts that because of the great distance this particular physician had to drive to the match, the fee set was equitable under the circumstances.

The potential for abuse which exists in such a system is self-evident; moreover, a potential for abuse which the Code legislatively mandates against. There does not appear to be any safeguard whatsoever in the assignment of fees. There is nothing to prevent, from our reading of this record, the Commission from assigning an arbitrarily large fee for a physician at the intermission of a match based on such factors as the size of the house, and later justifying such upon the equitable grounds of the travel of the physician, and his expertise. Without the promulgated schedule of fees, there can be no guarantee that an official has not been corrupted by the ease with which he may set arbitrary and excessive fees. Whilst we must acknowledge the Commission's concern that it be able to set equitable fees for the physicians, based on the length of time which a physi-

cian must travel and his mileage, as well as the type and difficulty of services which the physician is called upon to perform, we believe that these contingencies may be provided for by a fee schedule. Therefore, we must hold that the Commission has in fact been derelict in its duty to provide a fee schedule for physicians.

Concerning the referee's fee, the Commission is correct in arguing that it is under no legislative mandate to promulgate rules and regulations setting forth a fee schedule for referees. However, under its own regulations, it must set reasonable and equitable fees in view of the circumstances of the event. 58 Pa. Code §31.11(e). For the above-stated reasons, there can be no doubt that it is unreasonable to set a fee at intermission of a match based on arbitrary reasons not within this record. A regulation must give fair notice of what it purports to regulate; that is, it must be clear to the subjects of the regulation precisely what they will be required to do in order to conform to the regulation. Otherwise a regulation would be vague. *See Stouffer v. Pennsylvania State Police,* 76 Pa. Commonwealth Ct. 397, 464 A.2d 595 (1984); *Milewski v. Commonwealth of Pennsylvania,* 93 Pa. Commonwealth Ct. 120, 500 A.2d 1261 (1985).

In a recent decision, our Supreme Court has noted that:

> Discretion does not entail unbridled freedom for an agency to do absolutely whatever it pleases. Flagrant abuse of discretion, as a matter of law, can occur, and our courts will provide a remedy upon such an occurrence. See, Petition of Acchione, 425 Pa. 23, 227 A.2d 816 (1967); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed. 2d 192 (1970); Schwartz, Administrative Law, §§217-218 (Little, Brown & Company, 1976). Agency discretion can and, it has been ar-

gued, *should* be confined by enactment of agency rules and regulations. See, K. Davis, Administrative Law Treatise, §4.03 (3rd Edition, West Publishing Co., 1972).

*Commonwealth of Pennsylvania v. State Conference of State Police Lodges of the Fraternal Order of Police,* 513 Pa. 285, 520 A.2d 25 (1987).

In summation, before a license may be revoked for failure to pay a set fee, the published regulation setting the fee must be sufficiently definite for the licensee to determine the proper fee.

Having found that the Commission was derelict in its statutory duty, we must further hold that to revoke the petitioner's license to promote wrestling in the Commonwealth is an unduly harsh penalty for protesting the fees which were set. We, therefore, reverse the order of the Commission, and remand for reinstatement of the petitioner's license.

## ORDER

AND NOW, February 27, 1987, the order of the Pennsylvania State Athletic Commission in the above-captioned matter is hereby reversed, and the matter is remanded to the Commission for reinstatement of Petitioner's license.

Jurisdiction relinquished.

Judge CRAIG did not participate in this decision.