529 A.2d 589

James M. Lowery, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent:

184

Submitted on briefs November 19, 1986, to President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS, and PALLADINO.

*Spero T. Lappas, Stefanon & Lappas,* for petitioner.

*K. Douglas Daniel,* Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, July 31, 1987:

This is an appeal by James M. Lowery (Petitioner) from the order of the Commissioner of the Pennsylvania State Police (Commissioner) which affirmed a recommendation of the Court Martial Board of the Pennsylvania State Police (Board) to dismiss Petitioner from the Pennsylvania State Police.

On September 26, 1985, Petitioner was served with the following "Charge and Specifications":

CHARGE ONE—CONFORMANCE TO LAWS

In that Trooper James M. Lowery did not conform to and abide by the laws of the Commonwealth of Pennsylvania, in that he committed the crime of Rape, 18 Pa. C.S.A. §3121, when in March or April of 1984 he engaged in sexual intercourse with one Linda Lou Roberts, who was not his spouse, by forcible compulsion and the threat of forcible compulsion at his Fayetteville, Pennsylvania, residence, all of which is contrary to Pennsylvania State Police Field Regulation 1.02.

CHARGE TWO—UNBECOMING CONDUCT

In that Trooper James B.[sic] Lowery conducted himself in a manner which is unbecoming to a police officer and which could reasonably be expected to destroy public respect for Pennsylvania State Police officers and/or confidence in the Pennsylvania State Police, in that in March or April of 1984 he engaged in sexual intercourse with one Linda Lou Roberts against her will and without her consent at his Fayetteville, Pennsylvania residence, all of which is contrary to Pennsylvania State Police Field Regulation 1.01.

CHARGE THREE—CONFORMANCE TO LAWS

In that Trooper James B.[sic] Lowery did not conform to and abide by the laws of the Commonwealth of Pennsylvania, in that he committed the crime of Rape, 18 Pa. C.S.A. §3121, when on April 6, 1985 at approximately 2:30 a.m. he engaged in sexual intercourse with one Jerilyn Lee Mhoon, who was not his spouse, by

forcible compulsion and by threat of forcible compulsion at her residence in Chambersburg, Pennsylvania, all of which is in violation of Field Regulation 1.02.

CHARGE FOUR—UNBECOMING CONDUCT

In that Trooper James B.[sic] Lowery conducted himself in a manner which is unbecoming to a police officer and which could reasonably be expected to destroy public respect for Pennsylvania State Police officers and/or confidence in the Pennsylvania State Police, in that on April 6, 1985 at approximately 2:30 a.m. he engaged in sexual intercourse with one Jerilyn Lee Mhoon against her will and without her consent at her Chambersburg, Pennsylvania residence, all of which is contrary to Pennsylvania State Police Field Regulation 1.01.

CHARGE FIVE—CONFORMANCE TO LAWS

In that Trooper James B.[sic] Lowery did not conform to and abide by the laws of the Commonwealth of Pennsylvania, in that he committed the crime of Rape; 18 Pa. C.S.A. §3121, when on April 27, 1985 at approximately 4:00 a.m. he did have sexual intercourse with one Jerilyn Lee Mhoon, who was not his spouse, by forcible compulsion and by threat of forcible compulsion at her Chambersburg, Pennsylvania residence, all of which is in violation of Field Regulation 1.02.

CHARGE SIX—UNBECOMING CONDUCT

In that Trooper James B.[sic] Lowery conducted himself in a manner which is unbecoming of a police officer and which could reasonably be expected to destroy public respect for Pennsylva-

nia State Police officers and/or confidence in the Pennsylvania State Police, in that on April 27, 1985 at approximately 4:00 a.m. he engaged in sexual intercourse with one Jerilyn Lee Mhoon against her will and without her consent at her Chambersburg, Pennsylvania residence, all of which is contrary to Pennsylvania State Police Field Regulation 1.02.

On October 9, 1985, a Court Martial Hearing Board conducted a hearing after which Petitioner was found not guilty of Charges One and Two, but guilty of Charges Three through Six. The Board concluded that Petitioner could no longer effectively perform his duties as a member of the Pennsylvania State Police and recommended dismissal of Petitioner for each charge for which he was found guilty. Thereafter, on November 7, 1985, the Commissioner upheld the recommendation of the Board.

On appeal to this court, Petitioner asserts that: 1) the findings of the Board are not supported by substantial evidence; 2) the Commissioner is collaterally estopped from dismissing Petitioner because, prior to the Court Martial proceeding, Petitioner was acquitted of criminal charges of rape stemming from the same incidences outlined in the Charges and Specifications; and 3) Petitioner was denied due process because he did not have the opportunity to present evidence in mitigation of the penalty of dismissal imposed by the Board.

Initially, we note that

[d]espite the trappings of a criminal case with which State Police Court-Martial proceedings are invested by the Commissioner's regulations, the cause remains administrative in nature; it is simply the means by which a possible personnel action affecting the member of the Force charged with wrongdoing is determined. As the

appeal to us is taken in accordance with the Administrative Agency Law,[1] our review must be as that Act requires. We must therefore determine whether the findings of appellants' guilt are supported by substantial evidence.

*Luchansky v. Barger,* 14 Pa. Commonwealth Ct. 26, 35, 321 A.2d 376, 380-381 (1974) (citation omitted). In addition, Section 704 of the Administrative Agency Law authorizes our review to determine whether constitutional rights were violated or whether an error of law was committed by the Board in reaching its conclusions.

Petitioner first asserts that the Board's finding that he engaged in sexual intercourse with Jerilyn Lee Mhoon (Mhoon) "against her will and without her consent" and "by forcible compulsion and by threat of forcible compulsion" is not supported by "sufficient credible evidence." Petitioner does not dispute that he had sexual intercourse with Mhoon on both April 6, 1985 and April 27, 1985, but asserts that it was consensual because he and Mhoon had become social acquaintances over a period of several weeks. In his brief, Petitioner argues that his testimony provided direct evidence that the sexual intercourse was consensual. However, Petitioner also admits that Miss Mhoon's testimony is direct evidence to support the conclusion that the sexual intercourse was coerced. As a result, Petitioner argues that the case must be resolved by a review of the circumstantial evidence and that the circumstantial evidence is "wholly in his favor."

---

[1] In *Luchansky,* we cite Section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, as amended, *formerly* 71 P.S. §1710.44, repealed by the Act of April 28, 1978, P.L. 202. This act has been substantially recodified by the Administrative Agency Law, 2 Pa. C. S. §704.

In essence, then, Petitioner is asking us to weigh the evidence. This is not our function. The Board is the body charged with the responsibility to hear all evidence, resolve issues of credibility and make factual findings. *Soja v. Pennsylvania State Police,* 500 Pa. 188, 455 A.2d 613 (1982) (plurality decision) (opinion by NIX, J.) The Board specifically found the testimony presented by Mhoon to be more credible:

> 9. The Board finds that upon review of the conflicting testimony presented by Trooper James M. Lowery and Jerilyn Lee Mhoon, that the explanation by Jerilyn Lee Mhoon as to the note (Commonwealth's Exhibit No. 2)[2] is more credible than the testimony of Trooper James M. Lowery.
>
> . . .
>
> 14. The Board finds that the actions of Jerilyn Lee Mhoon on April 27th, 1985, in her prompt complaint to the Pennsylvania State Police and to Women in Need and her subsequent conduct lend more weight to her testimony than the testimony of Trooper James M. Lowery.

The record contains the following testimony by Mhoon regarding the alleged rape of April 6, 1985, which supports these findings:

> A. Well, first he threw his legs across me. First, he kissed me, and I said, 'don't do that.'

---

[2] After the alleged rape of April 6, 1985, Petitioner left the following note on Mhoon's car:

Dear Jerry[,]

I stop [sic] by yesterday and today at 0745 HRS to talk to you, I guess you do not want to talk to me now. I'm sorry what happen [sic] and I'm not sleeping to [sic] good about it. I wish you would call me and talk. I know now that I just lost a good friend.

Sincerely,

/s/Jim

And then he threw his legs across me and then he threw his—you know, then I asked him not to do that. And then he just put his whole—his arms and his legs and his whole body across me. And we started struggling and fighting there on the bed and I asked him, you know, 'Please don't do this.' And I said, 'That's my choice whether or not I want to do that, and I don't want to do that.'

And he, at that time, he wasn't saying anything. He was just pulling at my clothes he was pushing on my legs and pulling my hair, and I was crying and asking him to please stop, please stop.

And he told me that I was going to lose. He said, 'You can fight and lose or you can stop fighting and you're going to lose.' He told me that, 'I will hurt you,' that 'I promise you that I will hurt you.' And I just kind of froze. And he said—no, I said, 'You're going to hurt me?' And he said, 'Yes.' He said, 'I will hurt you,' if I didn't stop fighting.

. . .

Q. Up until that point, did Jim ever talk to you about if he was carrying a weapon?

A. Yes.

Q. What did he tell you?

A. He had told me that he always carried his gun and that it was always loaded and he wasn't afraid to use it.

N.T. at 114-115.

The record also contains testimony by Mhoon regarding a similar chain of events which led up to the incident of April 27, 1985. Although there was conflicting testimony from Petitioner as to the chain of events on both April 6 and April 27, 1985, the Board was

charged with the responsibility to assess the credibility of the witnesses and, given the substantial evidence which supports its findings, we may not alter the Board's findings on review.

Petitioner also asserts that the Board's finding that Petitioner can no longer effectively perform his duties as a member of the Pennsylvania State Police is not supported by adequate and sufficient evidence. However, this determination by the Board was a conclusion drawn from the findings of fact made by the Board. The Board is the body empowered by the legislature to determine the facts and draw conclusions therefrom. Absent a manifest abuse of discretion, we are wont to disagree with the conclusions reached by an agency with the expertise to assess more accurately the ability of an employee of that agency to perform his or her duties. *See* Sections 205 and 711 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §§65 and 251. In the case at bar, we find no abuse of discretion, in light of the findings of fact, by the Board in concluding that Petitioner could no longer effectively perform his duties as a Pennsylvania State Police Trooper.

Next, Petitioner asserts that because of his acquittal on criminal charges of raping Mhoon, the Commissioner is collaterally estopped from finding that Petitioner had raped Mhoon.

Collateral estoppel stands for the proposition that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson,* 397 U.S. 436 (1970). Further,

> The judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or as evidence, conclusive, between the same

> parties, upon the same matter, directly in question in another court; and the judgment of a court of exclusive jurisdiction, directly upon the point, is, in like manner, conclusive upon the same matter, between the same parties, coming incidentally in question in another court for a different purpose. In the present case, the court is the same court, and had jurisdiction, and the judgment was directly on the point now involved, and between the same parties.

*Coffey v. United States,* 116 U.S. 436, 445 (1886). In *Ashe,* the U.S. Supreme Court held that collateral estoppel was embodied in the Fifth Amendment's guarantee against double jeopardy. However, the double jeopardy clause merely prohibits *criminally* punishing twice, or attempting to punish twice, for the same offense. *One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232 (1972). Therefore, a subsequent *civil* action will not be barred by an acquittal in a criminal trial solely because it arose from the same act or omission. *Pennsylvania State Police v. Swaydis,* 504 Pa. 19, 470 A.2d 107 (1983); *V.J.R. Bar Corp. v. Liquor Control Board,* 480 Pa. 322, 390 A.2d 163 (1978). However, the civil action may not be criminal in nature for example as involving a loss of liberty such as a parole revocation proceeding. *Commonwealth of Pennsylvania v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983).

In the case at bar, we are faced with a Pennsylvania State Police Court Martial proceeding which has the appearance of a criminal case. However, notwithstanding this similarity, the Court Martial proceeding is purely administrative in nature, and is a personnel action. *Luchansky.* The Court Martial proceeding is a restriction of a previously absolute common-law power of removal of any employee at the whim of the Commissioner, with or without cause. *Dussia v. Barger,* 466 Pa.

152, 351 A.2d 667 (1975). Because Petitioner was dismissed in a civil action, the Commissioner was not collaterally estopped by reason of Petitioner's acquittal on the criminal charges of rape.

Lastly, Petitioner asserts that his due process rights were violated. It is well settled that a member of the Pennsylvania State Police has an enforceable property right in continued employment with the State Police. *Soja*. Accordingly, due process principles of notice and opportunity to be heard and defend apply. However, due process prerequisites may be adopted to the nature of a case before a tribunal hearing jurisdiction of the cause. *Id*. A court martial proceeding, being administrative in nature rather than criminal, does not require the strict guarding of an individual's rights that may be jeopardized in a criminal proceeding. *Brown v. Pennsylvania State Police*, 85 Pa. Commonwealth Ct. 643, 482 A.2d 1360 (1984), *remanded on other grounds*, 509 Pa. 316, 502 A.2d 126 (1985).

Specifically, Petitioner argues that his due process rights were violated because he did not have an opportunity, between announcement of the Board's decision and its imposition of a discipline, to present evidence in mitigation of the penalty imposed by the Board. However, Petitioner had ample opportunity to be heard, cross-examine witnesses, introduce documents and defend. Additionally, due process does not require a separate opportunity to present evidence in mitigation of a penalty between the guilt and sentencing phases in a court martial proceeding.

Accordingly, the order of the Commissioner is affirmed.

## ORDER

AND NOW, July 31, 1987, the order of the Commissioner of the Pennsylvania State Police in the above-captioned matter is affirmed.